SPENKELINK *v.* WAINWRIGHT ET AL.

No. A-1016.   Decided May 22, 1979

MR. JUSTICE REHNQUIST, Circuit Justice.

This application for stay has come to me by reason of the unavailability of MR. JUSTICE POWELL.   On December 20, 1973, following a trial and jury verdict, applicant was sentenced to death pursuant to the Florida statute that we upheld in *Proffitt* v. *Florida,* 428 U. S. 242 (1976), for a murder committed in February 1973.   On applicant's appeal, the Supreme Court of Florida affirmed both the conviction and sentence, *Spenkelink* v. *State,* 313 So. 2d 666 (1975), and this Court denied certiorari.   428 U. S. 911 (1976).   Applicant next sought executive clemency from the Governor of Florida, but his request for that relief was denied on September 12, 1977, and at the same time the Governor signed a death warrant setting applicant's execution for 8:30 a. m. on September 19, 1977.   The following day, applicant filed a motion

for collateral relief in the Florida trial court that had convicted him; this motion, too, was denied, the Supreme Court of Florida affirmed its denial, *Spenkelink* v. *State,* 350 So. 2d 85 (1977), and we again denied certiorari. 434 U. S. 960 (1977).

One day after he filed his petition for collateral relief in state court, however, applicant filed a petition for federal habeas corpus in the United States District Court for the Middle District of Florida, which transferred the case to the Northern District of Florida. That court stayed the execution and scheduled an evidentary hearing for September 21, 1977. At that time a hearing was held, which lasted from the late morning into the evening and produced over 300 pages of testimony. On September 23, the District Court dismissed the petition and ordered that the stay of execution previously issued by it terminate at noon on September 30. But the District Court also granted applicant a certificate of probable cause to appeal, and the Court of Appeals for the Fifth Circuit then stayed applicant's execution pending its decision of his appeal.

On August 21, 1978, a panel of the Court of Appeals for the Fifth Circuit affirmed the judgment of the District Court. *Spenkelink* v. *Wainwright,* 578 F. 2d 582. In an opinion comprising 39 pages in the Federal Reporter, the Court of Appeals for the Fifth Circuit dealt at length with all of applicant's claims, which had previously been rejected by the United States District Court and by the Supreme Court of Florida. It affirmed the judgment of the District Court, and we again denied certiorari on March 26, 1979, with MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL dissenting on the basis of their views set forth in *Gregg* v. *Georgia,* 428 U. S. 153, 227, 231 (1976). 440 U. S. 976.

According to the application now before me, the Governor of Florida again denied executive clemency on Friday, May 18, 1979, and signed a death warrant authorizing the execution of

applicant on Wednesday, May 23, 1979, at 7 a. m., e. d. t. On Monday, May 21, applicant filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Florida requesting the court to stay his execution pending consideration and final determination of the petition. According to the applicant, the only point he seeks to preserve in his application to me for a stay is that under this Court's decision in *Presnell* v. *Georgia,* 439 U. S. 14 (1978), "the failure to accord petitioner adequate advance notice of the aggravating circumstances alleged by the prosecution as the basis for seeking the death penalty" denied applicant rights secured to him by the Eighth and Fourteenth Amendments to the Constitution of the United States. In *Presnell, supra,* this Court held that the "fundamental principles of procedural fairness" enunciated in *Cole* v. *Arkansas,* 333 U. S. 196 (1948), "apply with no less force at the penalty phase of a trial in a capital case than they do in the guilt-determining phase of any criminal trial." 439 U. S., at 16. *Cole,* in turn, had held that "[t]o conform to due process of law, petitioners were entitled to have the validity of their convictions appraised on consideration of the case as it was tried and as the issues were determined in the trial court." 333 U. S., at 202.

This claim was submitted to and denied by the District Court for the Northern District of Florida on Monday, May 21, 1979. The District Court simultaneously entered a second order refusing certification of the appeal under both local and statutory rules, and denying a stay of execution pending appeal. Today, a panel of the Court of Appeals for the Fifth Circuit has, by a divided vote, denied applicant a certificate of probable cause, a certificate for leave to appeal *in forma pauperis,* and his motion for a stay of execution.*

---

*In light of the extensive scrutiny applicant's claims have received in the courts below, I decline to take the extraordinary step of granting a certificate of probable cause authorizing an appeal to the United States Court of Appeals for the Fifth Circuit from the District Court's judgment.

Throughout these many hearings, appeals, and applications, there has been virtually no dispute that substantial evidence supported the jury's verdict that applicant was guilty of first-degree murder, or that the Florida state trial judge had ample basis for following the jury's recommendation that the death penalty be imposed. The Supreme Court of Florida in its opinion affirming applicant's conviction stated:

"As more fully set out above the record shows this crime to be premeditated, especially cruel, atrocious, and heinous and in connection with robbery of the victim to secure return of money claimed by Appellant. The aggravating circumstances justify imposition of the death sentence. Both Appellant and his victim were career criminals and Appellant showed no mitigating factors to require a more lenient sentence." 313 So. 2d, at 671.

The Court of Appeals for the Fifth Circuit, in affirming the denial of federal habeas relief, said:

"On February 4, 1973, petitioner John A. Spenkelink, a 24-year-old white male and twice convicted felon, who had escaped from a California correctional camp, murdered his traveling companion, Joseph J. Szymankiewicz, a white male, in their Tallahassee, Florida motel room. Spenkelink shot Szymankiewicz, who was asleep in bed, once in the head just behind the left ear and a second time in the back, which fragmented the spine, ruptured the aorta, and resulted in the victim's death. [Spenkelink] then recounted a cover story to the motel proprietor in order to delay discovery of the body and left." 578 F. 2d, at 586.

When I granted an application for stay of execution as Circuit Justice in *Evans* v. *Bennett*, 440 U. S. 1301 (1979), I referred to the oft-repeated rule that a Circuit Justice must act as surrogate for the entire Court when acting on a stay application. Even though he would deny the application if

he were to consider only his own views as to its merits, he is obligated to consider the views that each Member of the Court may have as to its merits, and if he believes that four Members of the Court would vote to grant certiorari to review the applicant's claims, he is obligated to grant the application, provided it meets the other requirements for a stay. In *Evans, supra,* although I would not have voted to grant certiorari to consider applicant's claims, I was satisfied that there was a reasonable probability that four other Members of the Court would have voted differently. I therefore granted the application pending referral to the next scheduled Conference of the full Court.

In this case, by contrast, I have consulted all of my colleagues who are available, and am confident that four of them would not vote to grant certiorari to hear any of the numerous constitutional claims previously presented by applicant in his three earlier petitions for certiorari to this Court. It devolves upon me, however, as a single Justice, to answer as best I can whether four Members of the Court would grant certiorari to consider applicant's new claim that his death sentence was imposed in violation of our opinion in *Presnell* v. *Georgia.* The easiest way to find out, of course, would be to have the necessary copies of applicant's papers circulated to all eight of my colleagues in order to obtain their firsthand assessment of this contention at the next regularly scheduled Conference of the Court on Thursday. Even if I were only marginally convinced that there were four Justices who might vote to grant certiorari in order to hear this claim presented, in view of the fact that applicant's life is at stake, I would probably follow that course. But evaluating applicant's "new" claim as best I can, it does not impart to me even that degree of conviction. As I understand it, he contends that *Presnell,* which required that a state appellate court affirm a capital sentence on the same theory under which it had been imposed by the trial court, be extended to require

that the defendant receive some sort of formal notice, perhaps in the form of a specification in the indictment or information, of each and every one of the statutorily prescribed aggravating circumstances upon which the prosecution intends to rely for the imposition of the death penalty. I do not believe that four Members of this Court would find that claim either factually or legally sufficient to persuade them to vote to grant certiorari in order to review its denial in the federal habeas proceeding.

Applicant has conceded in his memorandum of law in support of the present federal habeas action that "defense counsel could properly have been expected to know that the State might seek a death sentence on the grounds that the offense was (1) committed by a defendant previously convicted of a felony involving the use or threat of violence or (2) committed by a defendant under sentence of imprisonment." Application, Exhibit B, p. 10. But the memorandum goes on to state that "a homicide caused by a single gun shot wound to the heart is not self-evidently 'especially heinous, atrocious, or cruel.' And it was not until the sentencing hearing itself that petitioner was appraised that the State would seek the death penalty on this ground." *Id.*, at 11.

*Cole* v. *Arkansas,* which *Presnell* simply extended to the sentencing phase of a capital trial, was after all decided in 1948, and was not then thought to embody any novel principle of constitutional law. Applicant concedes that there was adequate notice at the sentencing stage of the hearing for the State to seek the death penalty on two of the statutorily defined aggravating circumstances, and the fact that it has required six years for him to discover that he did not have adequate notice as to the other grounds upon which it was sought, and was thereby prejudiced, tends to detract from the substantiality of his contention.

Applicant has had not merely one day in court. He has had many, many days in court. It has been the conclusion of

the Supreme Court of Florida that the death sentence was imposed in accordance with the requirements of Florida law as well as those of the United States Constitution, and it has been the conclusion of the United States District Court for the Northern District of Florida and the Court of Appeals for the Fifth Circuit that there was no federal constitutional error in the process by which applicant was sentenced to death. Three times this Court has refused to review the determinations of these state and federal courts. I do not believe that the claim presented in the present application would be any more successful than the claims presented in the preceding three petitions for certiorari. The application for stay of execution of John A. Spenkelink, presently scheduled for Wednesday, May 23, 1979, at 7 a. m., e. d. t., is accordingly

*Denied.*