Mr. Justice Brennan and Mr. Justice Marshall would grant the application for a stay of execution. Furthermore, they object because the Court announces its action without first affording them an opportunity to prepare, circulate, and file a statement in support of their view.

No. A–1017. Filartiga et al. v. Pena-Irala et al. D. C. E. D. N. Y. Application for stay of deportation, presented to Mr. Justice Marshall, and by him referred to the Court, denied.

No. A–1020. Wainwright, Secretary, Department of Offender Rehabilitation of Florida v. Spenkelink. C. A. 5th Cir. Motion of the Attorney General of Florida to vacate the order entered by Honorable Elbert Parr Tuttle, Senior Judge of the United States Court of Appeals for the Fifth Circuit, on May 22, 1979, denied. Mr. Justice Rehnquist reserves the right to file a written statement at a future date. [See dissenting opinion, infra, filed May 25, 1979.]

Mr. Justice Rehnquist, dissenting.*

I cannot join the Court's unexplained denial of the State's motion to vacate the stay order entered a few minutes before

---

*The Court's denial of the motion took place on Thursday, May 24. Though the later action of the Court of Appeals for the Fifth Circuit in vacating the stay has robbed this Court's denial of any lasting significance,

midnight on May 22, 1979, by the Honorable Elbert P. Tuttle, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit. My difficulty with the Court's action, and with the action of Judge Tuttle in granting a stay in this case, undoubtedly stems from the six years of litigation revolving about the question of whether the State of Florida is entitled to impose the death sentence on respondent. This procedural history is set forth in detail in my May 22 in chambers opinion in which I denied respondent's application for a stay. *Post,* p. 1301. The stay occasioning the instant motion is, in my view, the product of a clear abuse of the writ of habeas corpus, and I am concerned that this Court's action implicitly sanctions the use of such tactics to frustrate the attempts of the State to effectuate the will of its citizens.

Attorneys representing defendants under sentence of death have a difficult and arduous task to perform, but in seeking stays of execution they need devote little time to the oft-litigated issue of "irreparable injury." "[D]eath is a punishment different from all other sanctions in kind rather than degree." *Woodson* v. *North Carolina,* 428 U. S. 280, 303–304 (1976) (opinion of STEWART, POWELL, and STEVENS, JJ.). The irreversible nature of the penalty makes irreparable by definition any injury inflicted in violation of the United States Constitution. But because imposition of the death penalty is irreversible, I respectfully suggest that there may be a tendency on the part of individual judges or courts exercising the extraordinary-writ authority conferred upon them by 28 U. S. C. § 1651 not merely to resolve all constitutional questions fairly admitting of doubt in favor of a federal habeas petitioner under sentence of death, but to create or assume such doubts where in fact there are none.

My understanding of the principal opinions in *Gregg* v. *Georgia,* 428 U. S. 153 (1976), *Proffitt* v. *Florida,* 428 U. S. 242

---

the legal questions involved are bound to recur in later cases. I am therefore filing this opinion dissenting from the Court's action.

(1976), *Jurek* v. *Texas,* 428 U. S. 262 (1976), *Woodson* v. *North Carolina, supra,* and *Roberts* v. *Louisiana,* 428 U. S. 325 (1976), is that a State whose citizens have expressed through their elected representatives and their judges and juries a will to impose the death penalty for offenses such as murder may do so if the State conforms its trial and sentencing procedures to the requirements enunciated in this Court's cases. Considering, however, that there are several hundred federal judges in the United States who have authority to issue stays under the provisions of 28 U. S. C. § 1651, even the relatively limited authority found open to the States under the Constitution in the above-cited cases could turn out, as a practical matter, to be entirely closed to them. Most, if not all, States provide for some lapse of time between the entry of a final order setting a date for execution and the date itself. Thus, the entry of a stay of execution by a federal court or judge, even though later dissolved, will generally require a State to set a new execution date, often 30 to 60 days after it is released from the constraints of the federal stay. As the new execution date approaches, new claims are conceived and, at the last minute, new stay applications are filed. Understandably, because no mortal can be totally satisfied that within the extremely short period of time allowed by such a late filing he has fully grasped the contentions of the parties and correctly resolved them, judges are inclined to grant such 11th-hour stay applications. Then, again, new execution dates must be set and the process begins anew. This now familiar pattern could in fact result in a situation where States are powerless to carry out a death sentence, even though it has been judicially determined that the sentence was imposed in complete conformity with the United States Constitution.

Thus, it can hardly be said that a State will never be injured by issuance of such last-minute stays of execution. When a State has taken all steps required by our capital cases, its will, as represented by the legislature that authorized the imposition of the death sentence and by the juries and courts that

imposed and upheld it, must be carried out. Constant and repeated frustration of the State's lawful action in such a situation is contrary to the underlying assumptions of our federal system. This Court was faced with a similar problem in *Rosenberg* v. *United States,* 346 U. S. 273 (1953). There, Mr. Justice Douglas had granted a stay of execution later found by the full Court to have been improvidently granted. The Court said:

> "This Court has the responsibility to supervise the administration of criminal justice by the federal judiciary. This includes the duty to see that the laws are not only enforced by fair proceedings, but also that the punishments prescribed by the laws are enforced with a reasonable degree of promptness and certainty. The stay which had been issued promised many more months of litigation in a case which had otherwise run its full course." *Id.,* at 287.

In the same case, Mr. Justice Clark, joined by the Chief Justice, Mr. Justice Reed, Mr. Justice Jackson, Mr. Justice Burton, and Mr. Justice Minton, stated:

> "Our liberty is maintained only so long as justice is secure. To permit our judicial processes to be used to obstruct the course of justice destroys our freedom. Over two years ago the Rosenbergs were found guilty by a jury of a grave offense in time of war. Unlike other litigants they have had the attention of this Court seven times; each time their pleas have been denied. Though the penalty is great and our responsibility heavy, our duty is clear." *Id.,* at 296.

Under the present combination of statutes and rules by which stay authority is exercised, however, a result so at odds with a government of law is by no means foreordained. This Court has authority pursuant to 28 U. S. C. § 1651 to vacate any stay granted by any other federal court or judge pursuant

to that same section. And under Rules 50 and 51 of this Court, the Circuit Justice for the Circuit in question may take any action that the full Court might take under § 1651. *Holtzman* v. *Schlesinger,* 414 U. S. 1304, 1308 (1973) (MARSHALL, J., in chambers). Vacation of a stay order that is palpably erroneous is authorized under § 1651, even though vacation of the stay would result in execution of the death sentence. See *O'Brien* v. *Brown,* 409 U. S. 1, 5 (1972).

Here, respondent has not had an opportunity to file any response to the motion to vacate the stay. Given the gravity of the consequences of vacation of the stay, only the most demonstrable and self-evident error on the part of the judge or court issuing the stay would lead me to conclude that it should be vacated. Here, the circumstances surrounding issuance of the stay convince me that such error is present.

Respondent's "Original Petition for a Writ of Habeas Corpus by a Person in State Custody," filed with Judge Tuttle six years after respondent's trial and less than nine hours before respondent was scheduled to die, alleged for the first time that respondent's trial attorney had rendered ineffective assistance of counsel. The petition further alleged that respondent's "post-conviction attorneys," who are, incidentally, extraordinarily skilled and experienced in the area of capital punishment cases, rendered ineffective assistance in failing to claim that respondent's trial counsel had been ineffective. It strains credulity to suppose that six years and countless courthouses after his trial, respondent suddenly determined that his trial attorney had been ineffective. Either he does not believe the claim himself or he had held the claim in reserve, an insurance policy of sorts, to spring on the federal judge of his choice if all else fails. This Court has disapproved of such tactics before:

> "Thus, for example, if a prisoner deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application, in the hope of being granted

two hearings rather than one or for some other such reason, he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground. . . . Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay." *Sanders* v. *United States,* 373 U. S. 1, 18 (1963).

See also Federal Habeas Corpus Rule 9 (b).

Moreover, respondent, for unexplained but obvious reasons, presented his original petition not to the United States District Court for the Northern District of Florida, the jurisdiction in which he is detained and which had twice denied him postconviction relief, but to a Senior Circuit Judge residing several hundred miles away in Atlanta, Ga. Title 28 U. S. C. § 2242, designed to deter such forum shopping, requires that petitions for habeas corpus "addressed to the Supreme Court, a justice thereof or a circuit judge . . . shall state the reasons for not making application to the district court of the district in which the applicant is held." Nowhere in respondent's original petition is such an allegation made.

For the foregoing reasons, I am compelled to dissent from the Court's denial of the State's motion.