Ronald K. SPIVEY, Petitioner-Appellant,

v.

Walter ZANT, Warden, Georgia Diagnostic and Classification Center, Respondent-Appellee.

No. 80–7243.

United States Court of Appeals, Fifth Circuit.* Unit B

Nov. 16, 1981.

Rehearing and Rehearing En Banc Denied Jan. 5, 1982.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

466

Jeffrey D. Colman, Jenner & Block, Michael Shepard, Chicago, Ill., for petitioner-appellant.

William B. Hill, Staff Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before DYER, TJOFLAT and FAY, Circuit Judges.

TJOFLAT, Circuit Judge:

## I.

On June 30, 1977, a jury in the Superior Court of Muscogee County, Georgia, convicted the petitioner, Ronald Keith Spivey, of one count each of murder and kidnapping and two counts each of aggravated assault and armed robbery. In a separate sentencing proceeding, the same jury recommended that Spivey be sentenced to death on the murder charge. The trial judge followed that recommendation and sentenced Spivey to death; he sentenced Spivey to life imprisonment on the armed robbery charges, twenty years on the kidnapping charge, and ten years on each assault charge.

The Supreme Court of Georgia affirmed the conviction and the death sentence, and the Supreme Court of the United States denied certiorari. *Spivey v. State*, 241 Ga. 477, 246 S.E.2d 288, *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 699 (1978).

Spivey then filed a petition for a writ of habeas corpus in the Superior Court of Butts County, Georgia. That court conducted an evidentiary hearing and then de-

nied the petition. Spivey's application to the Supreme Court of Georgia for a certificate of probable cause to appeal was denied, and the Supreme Court of the United States denied certiorari. *Spivey v. Zant,* 444 U.S. 957, 100 S.Ct. 438, 62 L.Ed.2d 330 (1979).

On December 20, 1979, Spivey filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Georgia and requested an evidentiary hearing. The district court issued its order on February 29, 1980, denying Spivey's request for an evidentiary hearing and his petition for the writ.

On appeal, petitioner asserts three grounds for relief from his death sentence: (1) that the Georgia trial court's capital sentencing instructions to the jury were constitutionally inadequate; (2) that the prosecutor's argument to the jury during the sentencing phase of the trial was improper and prejudicial in violation of the eighth and fourteenth amendments; (3) that the trial court's dismissal for cause of a particular venireman was improper because the venireman's expressions of misgivings about capital punishment fell short of the unequivocal unwillingness to impose the death penalty which is required by *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). For reasons set out in Part II of this opinion, we hold .that the state trial court's sentencing instructions were constitutionally inadequate, and we therefore reverse the federal district court's judgment to the contrary. So holding, we do not reach Spivey's second and third challenges to his death sentence.[1]

Petitioner also asserts three grounds for relief from his conviction: (1) that in viola-

tion of the sixth and fourteenth amendments, the trial court deprived him of guidance from counsel in the preparation of his defense by compelling him over his objection to undergo a sanity examination without notice of the purpose of the examination, at a time when he was not represented by counsel and had not raised an insanity defense; (2) that the State's introduction into evidence of the testimony of the psychiatrist who conducted the sanity examination violated petitioner's fifth and fourteenth amendment rights;[2] (3) that he was deprived of the effective assistance of counsel because of his attorney's failure to investigate, prepare, and effectively present an insanity defense and to develop a single mitigating circumstance in this capital case. For reasons set out in Part III of this opinion, we hold that the district court erred in denying petitioner's request for an evidentiary hearing concerning the deprivation of his sixth and fourteenth amendment rights associated with the sanity examination, and we therefore remand for an evidentiary hearing. Since the district court's determination of the sixth amendment issue on remand may render decision on the fifth amendment claim superfluous, we do not° reach that issue. Finally, for reasons set out in Part IV, we affirm so much of the district court's judgment as denied petitioner relief based on ineffective assistance of counsel.

## II.

In the sentencing phase of Spivey's trial, following jury arguments by both sides, the trial court instructed the jury:

1. Regarding the propriety of the prosecuting attorney's argument during the sentencing phase, and mindful that because of our disposition of this case the State may initiate a second sentencing proceeding, we do note the importance of the trial court's role in ensuring that jury arguments remain relevant and fair. *See Bruce v. Estelle,* 483 F.2d 1031, 1040 (5th Cir. 1973), *cert. denied* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977), *overruled in part on other grounds, Zapata v. Estelle,* 585 F.2d 750, 752 (5th Cir. 1978).

2. Spivey's appeal brief comes perilously close to abandoning his fifth amendment argument by focusing on the sixth amendment exclusively in the Summary of Argument and nearly exclusively in the Argument itself. Only by a brief reference to the fifth amendment in a footnote to his sixth amendment argument did petitioner avoid abandoning his fifth and fourteenth amendment claim under Fed.Rule App. Proc. 28(a)(4). *See, e. g., Harris v. Plastics Mfg. Co.,* 617 F.2d 438 (5th Cir. 1980).

Ladies and gentlemen, you have found the defendant guilty of the offense of murder. It is now your duty to determine, within the limits prescribed by law, the penalty that shall be imposed as punishment for that offense. In reaching this determination you are authorized to consider all of the evidence received by you in open Court, and both phases of the trial. You are authorized to consider all the facts and circumstances of the case.

Under the laws of this State, every person guilty of the offense of murder, shall be punished by life in the penitentiary, or death by electrocution.

I charge you that before you would be authorized to find a verdict fixing a sentence of death by electrocution, you must find evidence of statutory aggravating circumstances, as I will define to you later in the charge, sufficient to authorize the supreme penalty of the law.

I charge you that a finding of statutory aggravating circumstance shall only be based upon evidence convincing your mind beyond a reasonable doubt as to the existence of one, or of the factual condition in connection with the defendant's perpetration of acts for which you have found him guilty. (Sic)

Now, the law provides certain aggravating circumstances which you may consider for this purpose. If the offense of murder was committed while the offender was engaged in the crime of another capital felony, in this case, the capital felony charged by the State is that of armed robbery, I have given you in charge, you have received the definition of armed robbery.

The statutory instructions that you are authorized to consider will be submitted in writing to you the jury for your consid-

eration. If you fix his punishment as death, you must also designate in writing that aggravating circumstance which you find beyond a reasonable doubt.

Your verdict must be agreed to by all twelve of your members, it must be in writing, entered upon the indictment, dated and signed by your foreman, and returned in to Court for publication.

You may retire and begin your deliberations, after you have received the indictment and documented evidence adduced in the pre-sentence hearing, and then determine the penalty or punishment that shall be imposed in this case. You must first consider and find beyond a reasonable doubt that the aggravating circumstance, or the murder happening while in the perpetration of another capital felony, armed robbery; armed robbery is a capital felony, you must find that beyond a reasonable doubt.

If you find that to exist, then you shall so indicate in writing, then you will determine whether or not you will impose the death penalty, and your verdict then will be one of two: "We the jury recommend the death penalty," or "We the jury do not recommend the death penalty." That is a matter for your determination, ladies and gentlemen.

You will have this in writing to carry out with you to assist you in preparation of your verdict. You may retire at this time and fix punishment in this case.

Petitioner asserts that the charge did not mention or define mitigating circumstances, did not instruct the jury that it could apply principles of mitigation, and did not identify a particular mitigating circumstance of which there was evidence and which was well-founded in Georgia law.[3] Spivey con-

---

**3.** The mitigating circumstance to which petitioner refers is mental disturbance. Spivey presented an insanity defense during the guilt phase of the trial, and his attorney relied on Spivey's mental condition in his jury argument in the sentencing phase. On direct review, the Supreme Court of Georgia concluded that "[t]here was evidence . . . that would have authorized the jury to find that Spivey committed the murder while under the influence of ex-

treme mental or emotional disturbance." *Spivey v. State*, 241 Ga. 477, 478, 246 S.E.2d 288, 290 (1978). The mitigating effect of such a mental condition is well-founded in Georgia law; the Georgia Supreme Court requires the trial judge to file in each case in which the death penalty is imposed a report which identifies eight mitigating circumstances, including "The murder was committed while the defendant was under the influence of extreme mental

tends that such an instruction is violative of the eighth and fourteenth amendments. To address this claim, we first determine what instructions on mitigation, if any, the eighth and fourteenth amendments require in a sentencing charge, and then test the charge in Spivey's case by that standard.

The United States Supreme Court struck down the death penalty in Georgia and in thirty-nine other states in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), holding that the death penalty could not be imposed under a sentencing procedure that created a substantial risk that it would be inflicted in an arbitrary and capricious manner. *See Gregg v. Georgia*, 428 U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976) (plurality opinion). After *Furman*, Georgia enacted a new death penalty statute. The Supreme Court reviewed that statute and the statutes of four other states in 1976. *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (plurality opinion); *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) (plurality opinion); *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (plurality opinion); *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (plurality opinion); *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976) (plurality opinion). In those cases, the Court established that a death sentence could be imposed if a state fulfilled its

"constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty." *Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980) (plurality opinion). *See Gregg v. Georgia*, 428 U.S. at 188–195, 96 S.Ct. at 2932–2936. Accordingly, the constitution requires that a state death sentencing procedure "allow the particularized consideration of relevant aspects of the character and record of each convicted defendant before the imposition on him of a sentence of death." *Woodson v. North Carolina*, 428 U.S. at 303, 96 S.Ct. at 2991.

Elaborating on *Woodson*, a plurality of the Supreme Court has held that "the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case,[4] not be precluded from considering *as a mitigating factor*, any aspect of a defendant's character or record, and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978) (plurality opinion); *Bell v. Ohio*, 438 U.S. 637, 642, 98 S.Ct. 2977, 2980, 57 L.Ed.2d 1010 (1978) (plurality opinion). *Lockett* and *Bell* held unconstitutional the Ohio death penalty statute, which precluded the sentencer from considering certain sorts of mitigating circumstances.[5]

---

or emotional disturbance." Petitioner argues that where, as here, evidence of a mitigating circumstance which is well-founded in state law is presented at trial, the sentencing instruction must identify that circumstance. The State contends not only that such an enumeration of mitigating circumstances is not constitutionally compelled, but also that an enumeration would open the instruction to the charge that it impermissibly restricted the jury's consideration of unidentified factors, even if the trial court also instructed the jury it was authorized to consider nonenumerated circumstances. We do not decide in this case whether the federal constitution requires a trial court to identify particular mitigating circumstances in its jury instructions. Regarding the State's concern, however, we note that another panel of this court has approved in principle, though it did not require, an enumeration of statutory mitigating circumstances followed by a nonlim-

iting instruction. *Washington v. Watkins*, 655 F.2d 1346, 1377 (5th Cir. 1981) (dictum).

4. The Court reserved opinion on whether a mandatory death sentence might be permissible to deter certain kinds of homicide, such as a murder by a prisoner serving a life sentence. No such homicide is in issue here.

5. Once a verdict of aggravated murder with specifications had been returned, the Ohio statute required the judge to impose a death sentence unless after "considering the nature and circumstances of the offense" and the defendant's "history, character, and condition," he found by a preponderance of the evidence that (1) the victim of the offense had induced or facilitated it, or (2) that it was unlikely that the offender would have committed the offense but for the fact that he or she "was under duress,

The sentencing instruction that was given to Spivey's jury did not directly preclude the jury from considering as a mitigating circumstance whatever it wished; the court charged the jurors that they were "authorized to consider all the facts and circumstances of the case," and said nothing which could be construed to limit the jury's consideration of mitigating circumstances. Thus, this case is not within the narrow holding of *Lockett* or *Bell*.

However, this Circuit has read *Lockett* and *Bell* to require clear instructions on mitigation and the option to recommend against death. *Chenault v. Stynchcombe*, 581 F.2d 444 (5th Cir. 1978), was an appeal from a district court's denial of certain portions of a habeas corpus petition. We first affirmed the judgment of the district court, and then addressed an issue which the petitioner raised for the first time during oral argument, namely, whether the trial judge's instructions to the jury about mitigating circumstances and the option to recommend mercy were constitutionally inadequate. In order to decide whether the challenge to the sentencing instructions had to be remanded so that petitioner could exhaust his state remedies, we were required to determine whether the challenge permitted the petitioner to claim a substantial denial of a federal constitutional right, which was the state's standard for permitting collateral attack. 581 F.2d at 447.

In view of *Lockett* and *Bell*, we concluded that the petitioner's challenge did implicate a substantial denial of a federal constitutional right. *Id.* Having calculated that a

six-member majority of the Supreme Court would vacate a death sentence imposed by a sentencer barred from considering mitigating circumstances,[6] we reasoned:

> This constitutional requirement to allow consideration of mitigating circumstances would have no importance, of course, if the sentencing jury is unaware of what it may consider in reaching its decision. We read *Lockett* and *Bell*, then, to mandate that the judge clearly instruct the jury about mitigating circumstances and the option to recommend against death.

*Id.* at 448.[7]

In *Chenault*, we treated the requirement of clear instructions on mitigation and on the option to recommend against death as a corollary to *Lockett's* prohibition against instructions which preclude consideration of mitigating circumstances. Antecedent support for the constitutional requirement of clear sentencing instructions in capital cases derives from the Supreme Court's earlier conclusion that the eighth and fourteenth amendments require that "where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia*, 428 U.S. at 188–189, 96 S.Ct. at 2932:

> [T]he provision of relevant information under fair procedural rules is not alone sufficient to guarantee that the information will be properly used in the imposi-

coercion, or strong provocation," or (3) the offense was primarily the product of the offender's psychosis or mental deficiency. Ohio Rev.Code §§ 2929.03–2929.04(B) (1975 Repl. Vol.) Thus, as the Court found, considerations of a defendant's comparatively minor role in the offense, or age, would generally not be permitted to affect the sentencing decision. *Lockett*, 438 U.S. at 608, 98 S.Ct. at 2967.

**6.** The six-member majority consisted of the four-man *Lockett* plurality, Justice Marshall, who appeared to have suggested that the sentencer must be allowed to consider "the unique individuality of every criminal defendant," *Lockett*, 438 U.S. at 621, 98 S.Ct. at 2973 (Marshall, J., concurring in the judgment), and Jus-

tice Brennan, who did not hear *Lockett* but who consistently maintained that the death penalty was unconstitutional. The recent resignation of Justice Stewart reduces the aggregation to five, but a majority remains.

**7.** The State questions the authority of *Chenault* since we did not there reach the merits of the petitioner's claim. But as Spivey points out, *Chenault's* position on sentencing instructions is more than mere dictum; in order to hold that the challenge to the instruction was not properly before us, we necessarily decided that a substantial federal constitutional right was implicated.

tion of punishment, especially if sentencing is performed by a jury. Since the members of a jury will have had little, if any, previous experience in sentencing, they are unlikely to be skilled in dealing with the information they are given.... To the extent that this problem is inherent in jury sentencing, it may not be totally correctible. It seems clear, however, that the problem will be alleviated if the jury is given guidance regarding the factors about the crime and the defendant that the State, representing organized society, deems particularly relevant to the sentencing decision....

It is quite simply a hallmark of our legal system that juries be carefully and adequately guided in their deliberations. *Id.* at 192–193, 96 S.Ct. at 2934.

■ In light of *Lockett, Gregg,* and *Chenault,* we hold that the eighth and fourteenth amendments require that when a jury is charged with the decision whether to impose the death penalty, the jury must receive clear instructions which not only do not preclude consideration of mitigating factors, *Lockett,* but which also "guid[e] and focu[s] the jury's objective considera-

tion of the particularized circumstances of the individual offense and the individual offender ..." *Jurek v. Texas,* 428 U.S. at 274, 96 S.Ct. at 2957. In most cases, this will mean that the judge must clearly and explicitly instruct the jury about mitigating circumstances and the option to recommend against death; in order to do so, the judge will normally tell the jury what a mitigating circumstance is [8] and what its function is in the jury's sentencing deliberations. In some instances, it will be possible for the judge clearly to instruct the jury so as to guide and focus its consideration of the particularized circumstances of the individual offense and the individual offender without explicitly defining the nature and function of mitigating circumstances: [9] if, for example, the state sentencing procedure permits the jury to impose the death penalty only after giving specified answers to special interrogatories, and if those interrogatories satisfactorily focus the jury's consideration on the circumstances of the offense and the offender, then the requisite guidance is achieved without explicit discussion of mitigating circumstances.[10]

8. The constitution does not require the use of the words "mitigating circumstances." So long as the instruction clearly communicates that the law recognizes the existence of circumstances which do not justify or excuse the offense, but which, in fairness or mercy, may be considered as extenuating or reducing the degree of moral culpability and punishment, *Coker v. Georgia,* 433 U.S. 584, 590–91, 97 S.Ct. 2861, 2865, 53 L.Ed.2d 982, this portion of the constitutional requirement is satisfied.

9. We recognize that when we announced in *Chenault* that we read *Lockett* and *Bell* to mandate clear instructions about mitigating circumstances and the option to recommend against death, we did not intimate that there might be exceptions to this requirement. But the particular question before us in *Chenault,* see pp. 469–471, *supra,* did not call for a thorough exposition of eighth and fourteenth amendment requirements. Furthermore, our holding today is harmonious with *Chenault* in ensuring that the sentencing jury be suitably guided and focused in all capital cases.

10. *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (plurality opinion) is illustrative of such a procedure. The Texas death penalty statute provided that if a defend-

ant was convicted of a capital offense, the trial court must conduct a separate sentencing proceeding before the same jury that tried the issue of guilt. In order to impose the death penalty, the jury had to answer in the affirmative three questions:

(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

Tex.Code Crim.Proc., Art. 37.071(b) (Supp. 1975–1976).

Despite its silence concerning mitigating circumstances, the statute survived the petitioner's eighth and fourteenth amendment attack because a plurality of the Supreme Court concluded that the Texas Court of Criminal Appeals had broadly interpreted the second question—despite its facial narrowness—to permit the sentencer to consider whatever mitigating

■ In this case, the trial court's sentencing instructions[11] were devoted almost exclusively to a discussion of aggravating circumstances and their function in determining sentence. The only instructions which alluded, however implicitly or indirectly, to mitigating circumstances, or which could fairly be said to provide guidance to a juror who has found the presence of an aggravating circumstance and seeks direction on how to proceed, were:

> In reaching this determination, you are authorized to consider all the evidence received by you in open Court, and both phases of the trial. You are authorized to consider all the facts and circumstances of the case.

and

> If you find that [aggravating circumstance] to exist, then you shall so indicate in writing, then you will determine whether or not you will impose the death penalty, and your verdict will then be one of two: "We the jury recommend the death penalty" or "We the jury do not recommend the death penalty". That is a matter for your determination, ladies and gentlemen.

This is not the clear instruction which guides and focuses the jury's consideration and which we hold the constitution requires. Neither do the instructions in any sense describe the nature and function of mitigating circumstances, nor was the jury guided toward the consideration of mitigating circumstances by special interrogatories. The charge does not begin to communicate to the jury that the law recognizes the existence of facts or circumstances which, though not justifying or excusing the offense, may properly be considered in determining whether to impose the death sentence.[12] Petitioner's death sentence must be set aside.

---

circumstances the defendant might be able to show, and that the Texas sentencing procedure appropriately guided and focused the jury's considerations. 428 U.S. at 274, 96 S.Ct. at 2957.

In order to satisfy *Lockett,* of course, such a procedure could not preclude the jury from considering as a mitigating factor any aspect of the defendant's character or record or circumstances of the offense that the defendant proffered as a basis for a sentence less than death. See pp. 469–470, *supra.*

11. Spivey challenges the jury instructions that were given in his case, and not the facial constitutionality of the Georgia death penalty statute. That statute provides in relevant part, "... the judge shall consider, or he shall include in his instructions to the jury for it to consider, any mitigating circumstances or aggravating circumstances otherwise authorized by law ..." Ga.Code Ann. § 27–2534.1(b)(1) (1979). On direct appeal, the Supreme Court of Georgia first rejected Spivey's argument that the statute required the court to single out specific mitigating circumstances and identify them in the sentencing instruction, and then held that the statute was satisfied by an instruction that would communicate to a reasonable juror that he should consider all the facts and circumstances of the case as presented during both phases of the trial and that he could recommend life imprisonment even if he found one or more of the statutory aggravating circumstances to exist. Finally, the court found that this charge met that test. *Spivey v. State,* 241 Ga. 477, 246 S.E.2d 288, *cert. denied,*

439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 699 (1978).

The state habeas court, in an unpublished opinion, understood the state Supreme Court to have "held that the trial court did not commit error even though it failed to comply with the direction of the statute and charge on mitigating circumstances." The state habeas court doubted that the state death penalty statute could withstand constitutional scrutiny if the provision requiring instruction on mitigating circumstances was not construed as mandatory. The habeas court nonetheless denied Spivey's petition because it felt compelled to follow "what the law of Georgia appears to be on this issue."

There is no doubt but that Spivey may challenge the jury instructions without attacking the facial constitutionality of the death penalty statute. *See Washington v. Watkins,* 655 F.2d at 1373–74.

12. In reasoning that the jury was adequately instructed on mitigation, the district court attached importance to the fact that Spivey's lawyer strenuously argued to the jury that it should consider certain mitigating circumstances in determining sentence. But "arguments of counsel cannot substitute for instructions by the court." *Taylor v. Kentucky,* 436 U.S. 478, 488–489, 98 S.Ct. 1930, 1936, 56 L.Ed.2d 468 (1978). *See also, Carter v. Kentucky,* —— U.S. 288, 304 and 302 n.20, 101 S.Ct. 1112, 1121 (1978). *See also, Carter v. Kentucky,* 450 U.S.

### III.

The record shows that approximately two months before Spivey's trial, Spivey's appointed counsel, Cain, filed a motion for a "physical, neurological and psychiatric examination and determination of the mental condition of the Defendant." On April 8, 1977, a hearing at which Cain represented Spivey was held on this motion. Spivey informed the judge that Cain's motion, to which Spivey strongly objected, violated a promise by Cain not to make any such motion without consulting Spivey. The judge replied that he was obliged, regardless of any motion, to inquire into the defendant's competency to stand trial. At the end of the hearing, Spivey announced that he would never again discuss the case with Cain and that he wanted another attorney.

On April 15, 1977, the trial judge ordered a "physical, neurological and psychiatric examination, and determination of the mental condition of Ronald Keith Spivey on December 28, 1976 [the date of the alleged crime] and further to determine his mental capacity at this time to understand the nature of the charges against him and to assist his attorney in the defense of his case."

At trial, Dr. Smith, who examined Spivey pursuant to the April 15 order, testified for the State in rebuttal to Spivey's insanity defense. Dr. Smith testified that he saw Spivey four times in 1977, on April 18, May 2, May 3, and May 6, and that physical examinations, neurological examinations, and psychological testing were administered. Dr. Smith testified that he found nothing physically wrong with Spivey, that Spivey had sufficient mental capacity to distinguish between right and wrong, that he was sane and that there was no indication that he was ever mentally incompetent, and that the examinations had not revealed any physical or behavioral abnormality that would support Spivey's claim that he had blackouts. In answer to a hypothetical question, Dr. Smith opined that a person could not black out and perform the goal-directed activities Spivey was alleged to have performed on the night of the crime. Finally, Dr. Smith testified that Spivey had a sociopathic personality and that such a disorder is not insanity.

In his federal habeas petition, Spivey alleged that the trial judge did not tell Spivey or Cain at any time that he intended to order an examination of Spivey's sanity at the time of the crime along with an examination of his competency for trial; that nothing in the record showed that Spivey's sanity had been put in issue at the time of the April 15 order; that the judge nonetheless ordered a sanity examination as well as a competency examination; and that at the time of the order and examination, Spivey was without counsel, since he was not speaking to Cain or any other attorney. The petition concluded that the order requiring Spivey to submit to a pre-trial sanity examination, entered without notice to Spivey at a time when he was unrepresented by counsel, deprived Spivey of his liberty without due process and of his privilege against self-incrimination. Despite the petition's obscure invocation of the sixth amendment and its inartful intermingling of fifth and sixth amendment claims, we treat the petition as alleging that the examination offended both the fifth and the sixth amendments, as well as the fourteenth amendment.

In his prayer for relief, petitioner prayed that the district court conduct a hearing at which proof might be offered concerning the allegations of the petition. In its order denying habeas relief, the district court concluded as a matter of law that no evidentiary hearing was warranted because Spivey had had a full and fair hearing in the state proceedings.

Turning to Spivey's contention that the psychiatric examination had violated his right to due process of law and his privilege against self-incrimination, the district court first concluded that Spivey had been represented by counsel at the time the trial court entered its order directing that an examination be conducted. The district court's opinion shows that this conclusion was based *solely* on the fact that the April 15

order identifies William J. Schloth as the defendant's attorney.[13]

The district court then found petitioner's fifth amendment claim to be without merit, citing several cases holding that the trial judge has inherent authority to inquire into an accused's competence to stand trial [14] and one case holding that a court ordered psychiatric examination to determine sanity at the time of the offense did not violate the accused's privilege against self-incrimination.[15]

On appeal, Spivey contends that it was improper for the trial court to compel a sanity examination over his objection, without notice to him of the purpose of the exam, during a time after indictment when he was not represented by counsel, and before he had raised an insanity defense. Although Spivey's brief presents the fifth amendment claim as an inchoate afterthought,[16] we take his claim to be that his privilege against self-incrimination was violated when the court-appointed psychiatrist, without advising Spivey that he had the right to remain silent and that any statement he made could be used against him at trial, and without notifying him of the purpose of the examination, interrogated Spivey while he was in custody and before he had manifested an intention to assert an insanity defense, and then testified for the State in rebuttal to Spivey's insanity defense.

As to his sixth amendment claim, Spivey argues that he was not represented when the psychiatric examination was ordered or conducted and that without representation he was deprived of the chance to consult with counsel beforehand, so as to respond intelligently to the examination, and was deprived of the chance to insist on safeguards for the conduct of the examination. At least, Spivey urges, the district court should have granted an evidentiary hearing on this issue.

The district court did not have the benefit of *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) when it addressed petitioner's fifth and sixth amendment claims. In *Smith,* a Texas trial court had ordered a psychiatric examination to determine the competency to stand trial of a man who had been indicted for murder and against whom the State was seeking the death penalty. The man was represented by counsel. He was adjudged competent and subsequently was convicted in a jury trial. For the jury to impose the death penalty, Texas law required, among other things, that the jury find that there was a probability that the defendant would commit future acts of criminal violence that would constitute a continuing threat to society. At the sentencing proceeding, the psychiatrist who had conducted the court-ordered examination testified that the defendant was a severe sociopath whose violent behavior would surely continue. The jury imposed the death sentence.

In an opinion by Chief Justice Burger, the Supreme Court held that the introduction into evidence of the court-appointed psychiatrist's testimony to prove future dangerousness,[17] based on information

---

**13.** The district court's entire discussion of this point was: "Contrary to Petitioner's contentions that he was not represented by counsel at the time the aforementioned order was rendered, an examination of the order reveals that Petitioner's second defense counsel, Mr. William J. Schloth, is named therein. Thus, the record reveals that Petitioner was represented by new counsel at the time the court entered its order directing that a psychiatric examination be had."

**14.** *Presnell v. State,* 241 Ga. 49, 243 S.E.2d 496 *rev'd in part on other grounds,* 439 U.S. 14, 99 S.Ct. 235, 58 L.Ed.2d 207 (1978); *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 86

S.Ct. 836, 15 L.Ed.2d 815 (1966); *Smith v. Estelle,* 445 F.Supp. 647 (N.D.Tex.1977), *aff'd* 602 F.2d 694 (5th Cir.1979), *aff'd,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).

**15.** *United States v. Cohen,* 530 F.2d 43 (5th Cir. 1976)

**16.** See n.2, *supra.*

**17.** In holding that the fifth amendment pertained even after the defendant's guilt had been established, the court emphasized that the State bore the burden of proving future dangerousness in order to secure the death penalty. 101 S.Ct. at 1874–1875.

gleaned from an interrogation of a defendant in custody who had neither requested the examination nor introduced psychiatric evidence on that issue,[18] without a prior warning to the defendant that he had the right to remain silent and that any statement he made could be used against him in the sentencing proceeding, violated the rule of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Smith,* 451 U.S. 454, 466–470, 101 S.Ct. 1866, 1875–76, 68 L.Ed.2d 359. *See, Battie v. Estelle,* 655 F.2d at 697.

The Supreme Court held that the examination procedure also violated the defendant's sixth amendment right to counsel. That right attached when the psychiatrist examined the defendant and the interview proved to be a "critical stage" of the proceedings. *Id.* at 470, 101 S.Ct. at 1877. Since the defendant's attorneys received no notice that the psychiatric examination would encompass the issue of future dangerousness, their client was denied the assistance of counsel "in making the significant decision whether to submit to the examination and to what end the psychiatrist's findings could be employed." *Id.* Justice Stewart, joined by Justice Powell, agreed that since the examination took place without notice to defendant's counsel,

the sixth amendment prohibited the introduction of the psychiatrist's testimony; he would not have reached the fifth amendment issue. *Id.* at 1879, (Stewart, J., concurring in the judgment). Similarly, Justice Rehnquist agreed that the defendant's attorneys were entitled to be made aware of the psychiatrist's activities involving their client and to advise and prepare the client accordingly; he too would not have reached the fifth amendment issue. *Id.,* (Rehnquist, J., concurring in the judgment).

Although a majority of the Supreme Court in *Smith* reached the fifth amendment issue,[19] the case does not require us to do so here if the appeal can be resolved on other grounds. We turn first, then, to Spivey's sixth amendment claim.

◼ Spivey asserts that since the April 15 order and the April 18 examination occurred during the hiatus between Spivey's dismissal of his first appointed counsel, Cain, and the assumption by his second appointed counsel, Schloth, of any responsibility in the case, *Smith's* sixth amendment holding requires that his conviction be set aside. If the factual predicate of Spivey's assertion is accurate, then so is his conclusion; if Spivey was required to submit to the examination without previous notice to

We have viewed *Smith* as standing for the proposition that when a psychiatric or psychological examination is "used to determine a defendant's culpability or responsibility for the crimes charged against him, the Fifth Amendment privilege is involved because the use of [the] examination in this context may assist the State in establishing the basis for imposition of criminal punishment." *Battie v. Estelle,* 655 F.2d 692, 701 (5th Cir. 1981). When, as in *Spivey's* case, psychiatric evidence is used to establish a defendant's sanity at the time of the offense, then whether that evidence "assists the State in establishing the necessary predicate for imposing criminal punishment may turn on two factors: (1) whether the State or the defendant bears the burden of proving insanity; and (2) whether proof of insanity is inconsistent with proof of the elements of the offense charged against the accused". *Id.* at 701, n. 21. The law in Georgia appears to be that the defendant bears the burden of showing, by a preponderance of the evidence, that he was not mentally responsible at the time of the alleged crime. *See Potts v. State,* 241 Ga.

67, 243 S.E.2d 510 (1978); *Bryant v. State,* 149 Ga.App. 777, 256 S.E.2d 52 (1979).

**18.** The court left open the possibility that when a defendant asserts the insanity defense and introduces psychiatric testimony, he may be required to submit to a sanity examination conducted by the prosecution's psychiatrist. 451 U.S. at 465 and 466, n.10, 101 S.Ct. at 1874 and 1874, n.10. *See Battie v. Estelle,* 655 F.2d at 701–02. We do not decide this question today, nor do we address whether a constitutionally significant distinction arises when, as petitioner alleges here, the defendant is first examined by a court-appointed psychiatrist and later asserts an insanity defense.

**19.** Chief Justice Burger's opinion was joined in by Justices Stevens, Brennan, White, and Blackmun. Justice Marshall joined in all of the Chief Justice's opinion, including the fifth amendment analysis, except the suggestion that the death penalty may ever be constitutionally imposed. 451 U.S. at 474, 101 S.Ct. at 1879 (Marshall, J., concurring in part).

counsel, either because he had no attorney, as his petition alleges, or because he was represented but his attorney received no notice of the April 15 order, then this case is within *Smith* and Spivey's sixth amendment attack succeeds.[20] As in *Smith*, the psychiatric examination here was conducted after adversary proceedings had been instituted, as Spivey had been indicted. Spivey's sixth amendment right to counsel had attached when Dr. Smith examined him and their interview proved to be a critical stage of the proceedings against petitioner.

The district court rejected petitioner's sixth amendment claim on the basis of its factual finding that Spivey was represented by Schloth starting on April 15. We hold that this finding of fact was based on an incomplete and indeterminative record and that the district court should have conducted an evidentiary hearing in order to develop a proper foundation for a factual finding.

The district court's finding was based solely on the fact that the April 15 order identified William J. Schloth as Spivey's attorney.[21] In the face of petitioner's allegation that he was unrepresented, this was an inadequate foundation for decision. On point is *Sloan v. Wainwright*, 469 F.2d 390 (5th Cir. 1972) (per curiam), an appeal from the denial of habeas corpus relief without an evidentiary hearing. There the petitioner alleged that while the record indicated that an attorney had been appointed to represent him, he was denied the effective assistance of counsel because in fact he had not communicated with any attorney and no attorney had worked on his behalf. Concluding that the record did not provide an answer to the petitioner's assertions, we held that an evidentiary hearing was required under the teachings of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

*Sloan* applied the well-settled principle that when the facts underlying a habeas corpus challenge are in dispute, the court must hold an evidentiary hearing if the factual issue was not fully and fairly developed at the state level. *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). *See also, Bloodworth v. Hopper*, 539 F.2d 1382 (5th Cir. 1976); *Breen v. Beto*, 421 F.2d 945 (5th Cir. 1970); *Hayes v. Holman*, 346 F.2d 991 (5th Cir. 1965). Here, the central issue of primary, historical fact[22] underlying petitioner's sixth amendment challenge is whether he was in fact represented at the time of the April 15 order and the April 18 examination.[23] That issue was not developed at the state level and the record does not answer Spivey's assertions. The district court erred in refusing to conduct an evidentiary hearing. We will remand the case to the district court for an evidentiary hearing on the sixth amendment issue.[24]

IV.

In support of his contention that he was denied the effective assistance of counsel, petitioner launches a barrage of allegations attacking virtually every aspect of his attorneys' performance.[25] We reject this sixth amendment challenge to Spivey's conviction, finding that the underlying allegations either have been rendered moot by our decision in Part II of this opinion, or are not

---

**20.** Spivey has presented yet a third variation: that even if he was represented, neither he nor counsel was provided with notice that the psychiatric examination would be to determine sanity as well as competency. In light of the unambiguous content of the trial judge's April 15 order, see pp. 473–474, *supra,* this position is untenable.

**21.** See text at n.13, *supra.*

**22.** *See Townsend v. Sain*, 372 U.S. at 309, n. 6, 83 S.Ct., at 755, n. 6.

**23.** Whether counsel was present at the examination itself is not an issue in this case. *See Estelle v. Smith*, 451 U.S. at 470, n. 14, 101 S.Ct. at 1877, n. 14.

**24.** Thus, we do not reach the fifth amendment issue, and thereby avoid deciding such questions as those intimated in note 17, *supra*, and note 18, *supra*.

**25.** Spivey was represented at trial by two attorneys, Schloth and Byars; the record suggests that Schloth functioned as lead counsel.

properly before us or were correctly decided against Spivey by the district court.

Petitioner contends that counsel's performance during the sentencing proceeding was bankrupt in that counsel offered no mitigating evidence, failed to make appropriate objections to the prosecutor's closing argument, and himself presented a sparse and ineffective closing argument in the sentencing phase. Given our decision in Part II of this opinion that Spivey's death penalty cannot stand, consideration of these contentions would be superfluous. Thus, we do not address them.

■ Petitioner further contends that his trial attorney conducted an inadequate voir dire because he did not sensitize the jury to the case he would present and that he delivered a sparse and ineffective closing argument in the guilt phase of the trial. Since petitioner makes these arguments for the first time on appeal, we do, not reach them. *See Easter v. Estelle,* 609 F.2d 756, 759 (5th Cir. 1980); *Messelt v. Alabama,* 595 F.2d 247, 250 (5th Cir. 1979), and cases cited therein.

■ Finally, Petitioner contends that his trial attorney did not effectively investigate, prepare, and present Spivey's insanity defense. Before considering the merits of this contention, we note that the constitutional standard for effective assistance of counsel is:

> not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.

*Gaines v. Hopper,* 575 F.2d 1147, 1149 (5th Cir. 1978), *quoting Herring v. Estelle,* 491 F.2d 125, 127 (5th Cir. 1974).

The record belies petitioner's suggestion that counsel "stood still and did nothing" about the insanity defense. Counsel questioned prospective jurors during voir dire about their views on the insanity defense, and then indicated in his opening statement that an insanity defense would be presented. He examined at some length a psychologist whose testimony supported Spivey's insanity defense. He examined at even greater length Spivey, who testified about his troubled childhood, his medical history, the diagnoses of physicians who treated him, and his history of blacking out and committing violent acts when upset. He examined an acquaintance of Spivey who testified that following violent episodes Spivey was unable to recall what he had done. Finally, counsel's closing argument in the guilt phase of the trial focused on the insanity defense.

Spivey nonetheless maintains that counsel's presentation of the insanity defense was ineffective. Spivey's chief complaint appears to be that his attorney did not call certain witnesses who, Spivey alleges, would have buttressed his insanity defense. This charge was raised in the state habeas proceeding, where the court concluded that Spivey had made no showing as to what testimony these witnesses might have given that would have established any defense for him. We conclude that the district court properly relied on the state habeas court's factual determination of this issue.

■ The federal habeas corpus statute provides that when a state court has made a determination after a hearing on the merits of a factual issue, that determination shall be presumed correct by a federal court on habeas unless the petitioner is able to show the existence of one of seven enumerated circumstances, such as a defect in the state fact-finding procedure that rendered it inadequate to afford a full and fair hearing, or unless the factual determination is not fairly supported by the record; and the petitioner can overcome the presumption of correctness only by establishing by convincing evidence that the state factual determination was erroneous. 28 U.S.C. § 2254(d).

Here, the state habeas court found that Spivey had not carried his burden of showing how the uncalled witnesses would have helped him. The record shows that this finding followed a hearing at which petitioner had every opportunity to present evidence in support of his contentions.[26] No

---

**26.** Spivey suggested at oral argument that the reason for his inadequate showing in the state habeas court was that his attorney there, who was not his trial attorney, ineffectively repre-

contention was made in the district court that the state proceeding had been less than full and fair or in any other way did not comport with the conditions of 28 U.S.C. § 2254 to raise the presumption of correctness. Finally, the state court's determination is fairly supported by the record. Therefore, the state court's finding was presumptively correct and the district court was justified in holding that counsel was not shown ineffective by his failure to call witnesses when there was no showing what they would say.[27]

We are able to dispose more summarily of petitioner's other allegations in support of his contention that counsel ineffectively prepared and presented the insanity defense. Petitioner asserts that because of counsel's abrupt shift after the jury voir dire from a defense based on diabetes to a defense based on psychiatry, a jury primed for evidence about a diabetic defendant instead heard an insanity defense. This assertion is simply not supported by the record, which shows that the jurors were questioned as much or more about their views on the insanity defense than they were about their knowledge of diabetes.[28]

Finally, petitioner asserts that counsel did not adequately investigate a possible defense that Spivey had been mixing tranquilizers and alcohol on the day of the offense. Even if counsel did inadequately investigate this defense, a finding which we do not make here, we would hold that in light of the constitutional standard for effective assistance of counsel, see pp. 476–477, *supra,* and in light of counsel's reasonably effective presentation of the insanity defense, the district court did not err in finding that the

petitioner received the effective assistance of counsel.

## V.

We affirm so much of the district court's judgment as held that petitioner was not deprived of the effective assistance of counsel. We vacate so much of the district court's judgment as held that the mental status examination did not violate petitioner's rights under the fifth, sixth, and fourteenth amendments and remand for an evidentiary hearing to determine whether petitioner was represented by counsel at the time of the April 15 order and the subsequent examination. Having made the requisite factual findings, the district court will rule on the sixth amendment claim consistent with Part III of this opinion. In addition, the district court will reconsider petitioner's fifth amendment claim in light of *Smith* and *Battie, supra.* In order to expedite the final disposition of this case, we will retain jurisdiction and instruct the district court to certify its findings and the record of its proceedings on remand to us within forty-five days of the issuance of this opinion so that we may review the district court's judgment.

We reverse so much of the district court's judgment as held that the state trial court's sentencing instructions were constitutionally adequate. If petitioner's fifth and sixth amendment challenges to his conviction ultimately fail, then we will direct the district court to issue its writ providing for the state of Georgia to determine within a reasonable time whether to conduct a new sentencing proceeding in the manner provided by state law or to vacate petitioner's

sented him. Since petitioner raises this contention for the first time on appeal, it is not properly before us. *See* pp. 476–477, *supra.*

**27.** The district court actually found that "the witnesses Petitioner desired to testify at his trial would not have been able to provide any probative evidence." In these words, the finding goes further than the state court's finding did and than the record justifies. However, the district court's finding clearly encompasses the permissible and justified finding that petitioner

had not shown that the witnesses would have been able to provide probative evidence.

**28.** Furthermore, the questions about diabetes typically asked in the voir dire ("Are you a diabetic? Is anyone in your family or anyone you are close to a diabetic? Do you know anything about a glucose tolerance test? Do you know anything about diabetic behavior, how diabetics react?") would not likely have suggested that a diabetes defense was going to be presented.

sentence and impose a sentence less than death in accordance with state law.[29]

AFFIRMED in part; VACATED and REMANDED in part; REVERSED in part.

DYER, Circuit Judge, concurs.

FAY, Circuit Judge, with whom DYER, Circuit Judge, joins, specially concurring:

Judge Tjoflat accurately sets forth the opinions of the Supreme Court of the United States dealing with state statutes allowing the death penalty and appropriate consideration of mitigating circumstances. *Lockett* and *Bell*, along with our opinion in *Chenault*, require instructions which do not preclude consideration of mitigating factors and which allow objective consideration of the particularized circumstances of the individual offense and the individual offender. In my opinion, however, this does not require the trial judge to specifically list each and every conceivable mitigating circumstance that counsel may suggest either during trial or on appeal. But, we are bound by *Washington v. Watkins*, 655 F.2d 1346 (5th Cir. 1981), unless and until it is altered by the *en banc* court. As Judge Coleman points out in his dissent in *Washington*, the trial judge is damned if he does and damned if he doesn't. In this case, as in *Washington*, defense counsel was allowed to argue anything and everything he considered important or mitigating. In both instances, the juries were told to consider all of the evidence—all of the circumstances—aggravating and mitigating. This should be sufficient.

In addition, this issue, along with others, has twice been presented to the Supreme Court and rejected. It is no wonder our citizens are losing faith in the judicial process. Capital cases are unique. The responsibilities of the courts and the attorneys are awesome. Fairness to both the defendants and society demands that all courts set forth the rules and requirements in clear

simple terms. In my opinion, Mr. Spivey received a fair trial and has been found guilty of aggravated heinous crimes. If death penalty statutes are constitutional, it is our sworn duty to enforce them regardless of our personal feelings. As stated by Justice Rehnquist in his dissent in *Wainwright v. Spenkelink*, 442 U.S. 901 at 904, 99 S.Ct. 2421 at 2422, 60 L.Ed.2d 1075, "Constant and repeated frustration of the State's lawful action in such a situation is contrary to the underlying assumptions of our federal system."

29. *See Estelle v. Smith,* 451 U.S. 454, 472, 101 S.Ct. 1866, 1878 (1981) ("the state is free to conduct further proceedings not inconsistent with this opinion."); *Gardner v. Florida,* 430 U.S. 349, 362, 97 S.Ct. 1197, 1207, 51 L.Ed.2d 393 (1977) (plurality opinion).

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.