**Judson RUFFIN, Plaintiff,**

**v.**

**Walter D. ZANT, Warden, Defendant.**

**Civ. A. No. CV182–132.**

United States District Court,
S.D. Georgia,
Augusta Division.

July 19, 1984.

William H. Brandon, Decatur, Ga., Joseph M. Nursey, Millard C. Farmer, Atlanta, Ga., for plaintiff.

Mary Beth Westmoreland, Nicholas G. Dumich, Atlanta, Ga., for defendant.

## ORDER

BOWEN, District Judge.

The petitioner, Judson Ruffin, is under a sentence of death and applies to this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. As Chief Judge Owens [1] of the Middle District of Georgia cogently observed:

> Among the duties and responsibilities given United States district courts by

---

1. The same Judge Owens who, during the 1982 Eleventh Circuit Judicial Conference, coined the phrase "S.O.B. Jurisdiction" to describe what would remain in the federal courts if "diversity jurisdiction" is ever abolished.

Congress is that of considering and deciding applications of state prisoners for a writ of habeas corpus on the ground that the state prisoner "is in custody in violation of the Constitution or laws ... of the United States." 28 U.S.C. § 2254(a). This congressionally imposed duty and responsibility results in United States district courts—the trial courts of the federal court system—reviewing state criminal convictions that have already been reviewed by a Georgia trial court, a Georgia habeas court, and the state Supreme Court and found by them to be without United States Constitutional error. United States district court decisions are made by one district judge; the state trial, habeas and appellate court decisions are made by one trial, one habeas, and seven Supreme Court judges. As a practical matter Congress has thus created a federal habeas system which requires one United States district judge to review and agree or disagree with the opinions of nine Georgia trial and appellate judges on constitutional questions. Most United States district court judges dislike their role in state prisoner habeas actions as much as state trial and appellate judges dislike the concept of one federal judge reviewing the opinions of at least nine state judges. *See Schneckloth v. Bustamante*, 412 U.S. 218, 263–64, 93 S.Ct. 2041, 2066–67, 36 L.Ed.2d 854, 884 (1973) (Powell, J., concurring). Nevertheless, until Congress changes this concept it remains for this one United States district court judge to consider this state habeas case, even though it has already been considered by one trial judge, one habeas judge, and seven Supreme Court justices (on two separate appearances) of this state and found by them to contain no United States constitutional error.

*Wallace v. Kemp*, 581 F.Supp. 1471, 1473 (M.D.Ga.1984).

The Georgia Supreme Court summarized the evidence and described the petitioner's crime as follows:

The evidence produced at trial, including Ruffin's confession, justified the jury in finding the following facts:

In the late evening hours of July 26, 1976, Henry Lee Phillips was operating an Amoco service station off I–20 near Crawfordsville, Georgia, with his eleven-year-old stepson, Bonnie Bulloch, helping him. A car pulled into the station with three occupants. The appellant and the two co-indictees, Nathan Brown and Jose High, were in the car. The car had been in the station a week or two earlier. The three men got out of the car and one pointed a pistol at Phillips. Appellant had a sawed-off shotgun. Phillips was forced to leave the booth while the appellant removed the money from the register and demanded any other money. When Phillips told him that there was no more money, the appellant grabbed Bonnie Bulloch and told Phillips to get in the car trunk or Phillips and the boy would be killed.

Phillips got in the trunk of the car and when he was released from the trunk found that they were in the woods. Phillips and his stepson were ordered to lie on the ground. Phillips then heard shots fired. When Phillips regained consciousness he discovered that Bulloch was dead. In his confession, the appellant stated that he shot the boy in the head while his cohorts also shot at the victims. Phillips had been shot in the temple and wrist. He managed to get to a nearby house and the sheriff was summoned.

The appellant and his two companions returned to Augusta and he was subsequently apprehended, apparently on a different charge.

*Ruffin v. State*, 243 Ga. 95, 95–96, 252 S.E.2d 472, 474 (1979), *cert. denied*, 444 U.S. 995, 100 S.Ct. 530, 62 L.Ed.2d 425 (1980). The petitioner was convicted in the Superior Court of Taliaferro County on charges of armed robbery, possession of a firearm during the commission of a crime, kidnapping, murder and aggravated assault. Ruffin received the death penalty for the offense of murder and sentences of life imprisonment for the armed robbery

offense and for the kidnapping offenses. The trial court imposed a sentence of ten years imprisonment for aggravated assault and five years imprisonment for possession of a firearm, each sentence running consecutively to the other sentences already imposed.

The Supreme Court of Georgia affirmed the petitioner's conviction and sentence. *Ruffin v. State,* supra. Ruffin filed a state habeas corpus petition in the Superior Court of Tattnall County. The superior court held a hearing on October 31, 1980, and denied Ruffin's habeas corpus petition on April 23, 1981. *Ruffin v. Austin,* No. 80–93 (Sup.Ct. of Tattnall Co., Ga., April 23, 1981). On October 21, 1981, the Georgia Supreme Court denied Ruffin's application for a certificate of probable cause to appeal. The United States Supreme Court denied Ruffin's second petition for a writ of certiorari.

The petitioner is before this Court to challenge the constitutionality both of his conviction and of the sentence imposed. The state does not contest the fact that the petitioner has exhausted all of his available state remedies. In paragraphs 12 through 35 of his petition, Ruffin generally enumerates the following reasons to support his challenge:

1. The jury instructions on mitigating and aggravating circumstances were improper and insufficient. Paragraphs 12–15.

2. His counsel provided ineffective assistance. Paragraphs 16–22.

3. The jury failed to find a statutory aggravating circumstance. Paragraphs 23–25.

4. The statutory aggravating circumstance known as § (b)(7) was applied in an impermissibly vague and overbroad manner. Paragraphs 26–29.

5. Certain prospective jurors were improperly excluded for cause concerning their opinions about the imposition of the death penalty. Paragraphs 30–31.

6. The Georgia death sentence is administered in an arbitrary manner. Paragraph 32.

7. The Georgia death penalty is administered in a discriminatory manner against males, poor persons and defendants accused of killing Caucasians. Paragraph 33.

8. The death penalty is cruel and unusual punishment. Paragraph 34.

9. The petitioner's trial jury was biased in favor of the prosecution. Paragraph 35.

Even though Ruffin asked for an evidentiary hearing in his petition, he no longer presses his request to present further evidence. *See* Petitioner's Position Concerning the Need for an Evidentiary Hearing at 1 (June 15, 1983). The state agrees with the petitioner that an evidentiary hearing is not required. *See* Supplemental Brief at 4 (June 20, 1983).

## JURY INSTRUCTIONS ON MITIGATING AND AGGRAVATING CIRCUMSTANCES

In his petition at paragraphs 12–15 and 27, Ruffin challenges the constitutional adequacy of the trial judge's instructions to the jury during the sentencing phase of his trial in that the judge

1. failed to charge the jury on the nature, function and meaning of "mitigating circumstances" (Paragraph 13);

2. failed to charge the jury on their option to recommend life imprisonment even if they found the existence of statutory aggravating circumstances (paragraph 14); and

3. failed to charge the jury on the meaning of the aggravating circumstance under § (b)(7) (paragraph 27).

■ This Court recognizes its duty to construe jury instructions as a whole, rather than in a piecemeal fashion, when it determines their constitutional adequacy:

[It is a] well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be

viewed in the context of the overall charge. While this does not mean that an instruction by itself may never rise to the level of constitutional error, it does recognize that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction.

*Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973) (citations omitted). Even though the *Naughten* decision considered jury instructions at the conviction phase of an armed robbery trial, the same judicial policy should equally apply to instructions given at the sentencing phase of a murder trial.

In regard to Ruffin's first challenge to the trial judge's jury instructions, the Eleventh Circuit has stated:

> In light of *Lockett, Gregg* and *Chenault,* we hold that the eighth and fourteenth amendments require that when a jury is charged with the decision whether to impose the death penalty, the jury must receive clear instructions which not only do not preclude consideration of mitigating factors, *Lockett,* but which also "guid[e] and focu[s] the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender...." *Jurek v. Texas,* 428 U.S. [262] at 274, 96 S.Ct. [2950] at 2957 [49 L.Ed.2d 929 (1976)]. In most cases, this will mean that the judge must clearly and explicitly instruct the jury about mitigating circumstances and the option to recommend against death; in order to do so, the judge will normally tell the jury what a mitigating circumstance is and what its function is in the jury's sentencing deliberations.

*Spivey v. Zant,* 661 F.2d 464, 471 (5th Cir. Unit B 1981), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982). *See* *also Westbrook v. Zant,* 704 F.2d 1487, 1503 (11th Cir.1983).

At the sentencing phase of Ruffin's trial, the judge instructed the jury:

"Mr. Foreman—ladies and gentlemen of the jury—you have found the defendant guilty of the offenses of kidnapping as contained in Counts Nos. 3 and 4 of the bill of indictment and of the offense of murder as contained in Count No. 5 of the bill of indictment. It is now your duty to determine within the limits prescribed by law the penalty that shall be imposed as punishment for those offenses. In reaching this determination, you are authorized to consider all of the evidence received by you in open court in both phases of the trial. You are authorized to consider all of the facts and circumstances of the case. Under the law of this state every person guilty of the offense of murder and/or kidnapping, when the victim is injured, shall be punished by life in the penetentiary or death by electrocution.

"The law provides, Mr. Foreman and ladies and gentlemen of the jury, for punishment either by death, life imprisonment, or imprisonment for a period of years, insofar as the charge of armed robbery is concerned as is contained in Count No. 1 of this bill of indictment. As to that charge and count, you would fix the sentence only if you find that the defendant should be punished by death or life imprisonment. If you do not find that the defendant should be punished by death or life imprisonment, you should show this by your verdict, and the sentence would be then fixed by the Judge. In that case, the form of your verdict would be, as to Count No. 1, 'We, the jury, find that the defendant should receive less than a life sentence.' In that case your duty would be ended. If this is not your finding, however, as to Count No. 1, you would apply the remaining instructions which would be given to you and determine whether the defendant should be punished by death or life imprisonment. In reaching this determination you are authorized to consider all of the evidence received by you in open court in both phases

of the trial. You are authorized to consider all of the facts and circumstances of the case.

"In the event that your verdict is life imprisonment, that is, as it applies to Counts Nos. 3 and 4 relating to kidnapping, the punishment the defendant would receive would be imprisonment in the penetentiary for and during the remainder of his natural life. If that be your verdict, you would add to the verdict already found by you an additional verdict as follows: 'And we fix his punishment as life imprisonment.'

"As it applies to kidnapping, when the victim is injured, you may, however, if you see fit, and if that be your verdict, fix his punishment as death, which would require a sentence by the Court of death by electrocution. If that be your verdict, you would add to the verdict already found by you an additional verdict as follows: 'And we fix his punishment as death.'

"I charge you that before you would be authorized to find a verdict fixing a sentence of death by electrocution, you must find evidence of statutory aggravating circumstances, as I will define to you later in the charge, sufficient to authorize the supreme penalty of the law. I charge you that a finding of statutory aggravating circumstance or circumstances shall only be based upon evidence convincing your minds beyond a reasonable doubt as to the existence of one or more of the following factual conditions in connection with the defendant's perpetration of the act or acts for which you have found him guilty. They are: (1) the offense of murder and/or armed robbery and/or kidnapping was committed while the offender was engaged in the commission of another capital felony or aggravated battery; (2) the offense of murder and/or armed robbery and/or kidnapping was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim.

"Now, the statutory instructions that you are authorized to consider will be submitted in writing to you for your delibera-

tion. If you fix his punishment as death, you must also designate in writing, the aggravating circumstances or circumstance which you found beyond a reasonable doubt. Your verdict should be agreed to by all twelve of your members. It must be in writing, entered under the instructions of the Court, dated and signed by your Foreman, and returned into Court for publication.

"Now, the Court has prepared the necessary charge which it has referred to in writing and in addition to that fact, the Court has caused to be placed thereon a verdict of the jury, and you may use this form itself or as your guide. It must be clear, concise and specific. That is, the verdict—your findings—and your recommendations as to these sentences in these cases. It is provided on there that you either—on the form that is prepared by the Court—that you specify 'life in prison' or specify the death penalty.

"I would charge you insofar as that is concerned that you specify the counts—whatever counts you may determine that he—if you find that the life sentences shall be imposed upon him, you must specify the counts as they are contained in the bill of indictment—that he shall be sentenced for life upon. And, if you find that he shall be sentenced to death, you must specify there the counts under which you sentence him to death. You would do it in the place provided here for that purpose.

"Also, I charge you that if you recommend the death penalty, as stated, you must recommend the counts under which you find and recommend the death penalty, you must state and set forth the aggravating circumstances which caused you or compelled you to inflict the death penalty as to whatever count or counts you might see fit to inflict such penalty.

"Ample space is left in this form for you to write out and you must detail, if such be your finding, the aggravating circumstances which cause or compel you to affix the death penalty for that count or those counts which you think and determine he is entitled to receive.

"After you shall have arrived at your verdict—Mr. Foreman, you would enter that verdict upon this form supplied to you by the Court together with this charge, you would conform that verdict to the form which has been prepared. You would date it and sign it and you would then return it into Court. Now, you might retire and commence your deliberations after you have received the indictment, the evidence adduced during the course of this last trial, and then determine the penalty or punishment that shall be imposed in this case. You may retire."

Trial Transcript at 432–36.

▪ The entire text of the trial judge's jury instructions during the sentencing phase has been set out because these instructions are almost identical in the critical language to the jury charge found unconstitutional in the case of *Spivey v. Zant*, 661 F.2d at 468. What the *Spivey* court stated concerning the unconstitutional jury instructions under review applies with equal force to the charge given at Ruffin's trial:

> In this case, the trial court's sentencing instructions were devoted almost exclusively to a discussion of aggravating circumstances and their function in determining sentence. The only instructions which alluded, however implicitly or indirectly, to mitigating circumstances, or which could fairly be said to provide guidance to a juror who has found the presence of an aggravating circumstance and seeks direction on how to proceed, were:
>
> > In reaching this determination, you are authorized to consider all the evidence received by you in open Court, and

both phases of the trial. You are authorized to consider all the facts and circumstances of the case.

and

> > If you find that [aggravating circumstance] to exist, then you shall so indicate in writing, then you will determine whether or not you will impose the death penalty, and your verdict will then be one of two: "We the jury recommend the death penalty" or "We the jury do not recommend the death penalty". That is a matter for your determination, ladies and gentlemen.
>
> This is not the clear instruction which guides and focuses the jury's consideration and which we hold the constitution requires. Neither do the instructions in any sense describe the nature and function of mitigating circumstances, nor was the jury guided toward the consideration of mitigating circumstances by special interrogatories. The charge does not begin to communicate to the jury that the law recognizes the existence of facts or circumstances which, though not justifying or excusing the offense, may properly be considered in determining whether to impose the death sentence. Petitioner's death sentence must be set aside.

*Id.* at 472. The trial court's instructions given during the sentencing phase of Ruffin's trial are unconstitutional under the precedents established by the Eleventh Circuit.[2] Ruffin's death sentence, consequently is set aside. Having set aside the death sentence, the Court need not consider the allegations set out in paragraphs 14–15, 19, and 23–24 of the petition.

---

**2.** This is the law as I read it and as I am bound by oath to apply it. If there are any "mitigating circumstances" in the cold-blooded shotgun murder of an eleven-year old boy, the jury must be instructed to consider same during its deliberations. The crime to which the petitioner confessed was committed over eight years ago. Because of the delays attendant to the proceedings in state and federal courts which protect the procedural and substantive rights of the petitioner, it could be said that justice has been denied. The taxpayers of this state have proba-

bly spent over $100,000 in housing the petitioner during his grim litany in court. This case is but another instance of the unconscionable waste of time and money that typify the appeals and habeas corpus proceedings arising in death penalty cases. The courts cannot correct the problem. The Congress of the United States must act to restore the confidence of the public in a legal system whose object always has been to administer justice fairly, and to impose punishment for crimes swiftly and surely.

INEFFECTIVE ASSISTANCE
OF COUNSEL

An allegation remaining for consideration is that Ruffin's trial counsel provided ineffective assistance because of an alleged conflict of interest between the trial counsel's representation of Ruffin and his joint representation of Ruffin's codefendant, Nathan Brown, in a separate trial. *See* Paragraph 17. The United States Supreme Court in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), specifically addressed the issue of a claim of ineffective assistance due to conflicts of interest in multiple representation cases. In vacating the lower court's decision, the *Cuyler* court instructed:

> The Court of Appeals granted Sullivan relief because he had shown that the multiple representation in this case involved a possible conflict of interest. We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance.

*Id.* at 350, 100 S.Ct. at 1719.

The petitioner points to portions of his trial counsel's testimony at the state habeas corpus hearing to show the alleged conflict of interest. The trial counsel testified that he pursued the possibility of a plea bargain for the codefendant Nathan Brown. The agreement would require, in part, that Nathan Brown testify for the state in the criminal case against Ruffin. This plea arrangement never materialized, but the testimony does not clearly explain the reason. At one point, the trial counsel testified that Brown refused the offer to testify against the codefendants, but at another point, the testimony indicates that the state would not agree to a plea arrangement. *See* Habeas Corpus Transcript at 104–06. *Ruffin v. Austin*, No. 80–93 (Sup.Ct. of Tattnall Co., Ga., Oct. 31, 1980).

■ While the statements by Ruffin's trial counsel indicate the potential for a conflict of interest, the statements do not show any actual conflict existed. A plea agreement with Nathan Brown never existed, and Brown did not testify as a witness in Ruffin's case. Trial counsel represented Ruffin in one trial and represented Brown in a completely separate trial. Whatever possibility existed for a conflict of interest in the trial counsel's representation of these two codefendants never *actually* occurred.

The petitioner also asserts other allegations of ineffective assistance of counsel. His trial counsel allegedly was unprepared when the court notified the parties concerning a trial date and improperly failed to request a continuance. *See* Paragraph 18. Counsel did not challenge the composition of the array of the grand jury that indicted Ruffin. *See* Paragraph 20. Trial counsel failed to request additional funds for representation, *see* Paragraph 21, and failed to object to the prosecution's allegedly prejudicial closing arguments at both phases of his trial. *See* Paragraph 22.

In *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court explained the general standard for analyzing a claim of ineffective assistance of counsel:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

> .    .    .    .    .

> Judicial scrutiny of counsel's performance must be highly deferential. It is all

too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at —— – —— & ——, 104 S.Ct. at 2064, 2065–2066 (citations omitted.)

█ The performance of Ruffin's trial counsel in his representation of the petitioner does not breach the *Strickland v. Washington* standard for effective assistance. In his testimony at the state habeas corpus hearing, trial counsel explicitly stated that he had fully prepared for the case when he received the notice of trial. Habeas Corpus Transcript at 86 & 105. He also stated that he had considered and rejected the opportunity to challenge the array of the grand jury. *Id.* at 79–80 & 106. Nothing in the record demonstrates that Ruffin's trial counsel was ineffective. Ruffin's argument on these grounds fails to furnish a basis for habeas corpus relief.

### PROSECUTION—PRONE JURY

█ In paragraph 35 of Ruffin's petition, Ruffin claims that the jury was biased in favor of the prosecution on the issue of guilt or innocence, because jurors opposed to capital punishment were excluded from the jury. The petitioner's brief admits that

*Smith v. Balkcom,* 660 F.2d 573 (5th Cir. Unit B 1981), *amended on rehearing,* 671 F.2d 858 (5th Cir. Unit B 1982), adversely disposes of this challenge. Pre-Hearing Brief for Petitioner at 27. The petitioner is correct. This argument has no merit.

### CONCLUSION

The petitioner's death sentence must be set aside due to the inadequate instructions given to the jury during the sentencing phase. Within 180 days from the date this decision becomes final because of expiration of time to appeal or the issuance of a mandate affirming this order, whichever is later, the state shall cause petitioner to be retried on the question of what sentence should be imposed for the crime of murder for which the petitioner's guilt has already been constitutionally established. If the state fails to comply, the petition may make a written motion for the issuance of an order discharging him for all time from the death sentence on his murder conviction.