Horace William DIX,
Petitioner-Appellee,
Cross-Appellant,

v.

Ralph KEMP, Warden, Georgia State
Prison, Respondent-Appellant,
Cross-Appellee.

No. 84–8342.

United States Court of Appeals,
Eleventh Circuit.

June 5, 1985.

Susan V. Boleyn, Atlanta, Ga., for respondent-appellant, cross-appellee.

Joseph M. Nursey, Millard C. Farmer, August F. Siemon, Atlanta, Ga., for petitioner-appellee, cross-appellant.

Before TJOFLAT and JOHNSON, Circuit Judges, and DUMBAULD *, District Judge.

JOHNSON, Circuit Judge:

Horace William Dix was convicted of murder in 1975 in the Superior Court of Clayton County, Georgia. He later sought post-conviction relief on several grounds, all of which were denied by the state courts. The federal district court granted a writ of habeas corpus on the ground that the state trial court's charge to the sentencing jury did not adequately explain the nature and function of mitigating circumstances. The district court declined to grant relief on any other claim. We hold that the sentencing charge did indeed fail to channel properly the discretion of the jury regarding mitigating circumstances. Furthermore, the trial court's instruction impermissibly shifted the burden of proof to the defendant under circumstances where it could not be considered harmless error. Accordingly, we affirm in part and reverse in part.

The petitioner and his wife, Dixie Jordan, divorced in 1974. One month after the divorce, he came to visit at her house. The two were alone in the house when they began to quarrel. She threw an ashtray at him and he claims to remember nothing about what transpired afterwards. His wife's body, which was found in a bedroom of the house, showed that she had been tortured and stabbed to death.

The trial focused on the sanity of Dix at the time of the killing.[1] He presented evidence tending to show that he was insane at the time of the killing, including a history of mental disability beginning with a head injury sustained while in the Navy, a pattern of bizarre behavior close to the time of the killing (including his surprise that his wife had not visited him in jail), and the testimony of a psychiatrist who had examined him, Dr. William P. Sapp. The State presented its own expert witness, Dr. Miguel Bosch, who believed that Dix suffered from a mental disorder, a depressive neurosis, which did not relieve him of criminal responsibility for the killing. The jury, after hearing the instructions on malice and intent now challenged on this appeal, returned a guilty verdict. The trial then entered its sentencing phase and the jury heard the instructions from the trial court regarding mitigating circumstances. The jury recommended the death sentence.

I. Jury Instructions Regarding Mitigating Circumstances

In the first of his two extant grounds for requesting habeas corpus relief,[2] the petitioner claims that the trial judge's charge to the sentencing jury did not satisfy the requirements of the Eighth Amendment because it failed to give proper guidance regarding the nature and function of mitigating circumstances. The Eighth Amendment does require that the jury consider all mitigating circumstances in determining the appropriate and individualized sentence for a particular defendant. *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Eddings v. Oklahoma,*

* Honorable Edward Dumbauld, U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

1. Dix was also tried for the subsequent kidnapping of his mother-in-law, sister-in-law and niece. Those charges are not at issue here.

2. Dix originally enumerated 15 different grounds for relief. The district court granted relief on one ground and denied all the other claims. The state appealed the district court's ruling on the *Spivey* issue, while the petitioner filed a cross-appeal on four other grounds: (1) the *Sandstrom* claim, (2) the alleged failure of the trial court properly to instruct the jury regarding aggravating circumstances, (3) the failure of the trial court to hold a hearing to determine his competence to stand trial in violation of *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), and (4) the unconstitutionality of the death penalty as applied in Georgia (a claim identical to the one heard by the *en banc* court in *McCleskey v. Kemp*, 753 F.2d 877 (11th Cir.1985). Counsel for petitioner abandoned at oral argument all claims except for the *Spivey* and *Sandstrom* claims.

455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). As the court explained in *Spivey v. Zant,* 661 F.2d 464, 471 (5th Cir. Unit B 1981), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982), a requirement that the jury consider all relevant mitigating evidence would have no meaning at all unless the jury understands how to recognize and evaluate a mitigating circumstance. *See also Chenault v. Stynchcombe,* 581 F.2d 444 (5th Cir.1978). Therefore, the trial judge at the sentencing phase must give the jury careful instructions to explain the nature and function of mitigating circumstances.[3]

■ The exact contours of such instructions must be decided on a case-by-case basis. No single incantation, such as the use of the words "mitigating circumstances," is necessary in every case. Nevertheless, several recent precedents lead us to conclude that the instructions in this case did not properly guide the jury in its consideration of mitigating circumstances.

In *Spivey v. Zant,* 661 F.2d 464 (5th Cir. Unit B 1981), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982), the court stated that in most cases[4] a judge must tell the jury "what a mitigating circumstance is and what its function is in the jury's sentencing deliberations." The instruction in that case, which merely authorized the jury to consider all the evidence before them, failed "to communicate to the jury that the law recognizes the existence of facts or circumstances which, though not justifying or excusing the offense, may properly be considered in determining whether to impose the death sentence." *Id.* at 472 (footnote omitted); *see also*

*Goodwin v. Balkcom,* 684 F.2d 794, 801–02 (11th Cir.1982), *cert. denied,* 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983).

■ Later cases have noted that a trial court does not fulfill its responsibility simply by informing a jury that it may consider mitigating circumstances. *Morgan v. Zant,* 743 F.2d 775 (11th Cir.1984); *Finney v. Zant,* 709 F.2d 643 (11th Cir.1983); *Westbrook v. Zant,* 704 F.2d 1487 (11th Cir. 1983). The words "mitigating circumstances," while they have meaning to most jurors, still do not adequately communicate the precise nature or function of that concept in the context of a sentencing trial. Mere reference to the possible consideration of mitigating circumstances does not tell a jury "why the law allows such a consideration and what effect a finding of mitigating circumstances has on the ultimate recommendation of sentence." *Westbrook v. Zant,* 704 F.2d at 1503.

■ The trial judge in this case gave the following instruction at the sentencing trial regarding mitigating circumstances:

> You are authorized to consider all of the facts and circumstances[,] if you find any, in extenuation and mitigation of punishment. You are also authorized to consider all of the facts and circumstances, if you find any, regarding the gravity of the offense and your knowledge of the personal background of the defendant as shown to you by the evidence.

This instruction could be taken as a proper explanation of the nature of mitigating circumstances. Yet, it might have left the jury confused about the nature of mitigating circumstances, for first it mentions mitigating circumstances and then it says

---

**3.** The failure to explain the nature and function of mitigating circumstances is distinct from the claim that the charge fails to authorize the consideration of mitigating circumstances despite the presence of statutory aggravating circumstances.

The Supreme Court's recent opinion in *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), does not, as the state suggests, relieve this court of its duty to scrutinize jury instructions regarding mitigating circumstances. The case dealt with appellate review of aggravating circumstances but did not in any

way imply that such review was the exclusive or primary inquiry of a reviewing court.

**4.** The court in *Spivey* allowed for an exception to this requirement when the sentencing procedures apart from the trial court's instructions satisfactorily focus the jury's consideration of the circumstances of the offense and the offender. Special interrogatories might provide such a focus. The procedures set forth in the Georgia death penalty statute did not suffice in *Spivey;* obviously the same holds true in this case.

"you are *also* authorized to consider..." (emphasis added). A juror could have concluded from this that the facts and circumstances discussed in the second sentence were separate and distinct from the mitigating circumstances introduced in the first sentence.

Further, and most importantly, the instruction did not explain the function of a mitigating circumstance. The charge never set forth the reasons that a mitigating circumstance might be significant and never explained that mitigating circumstances could lead a jury to recommend mercy. The courts in *Morgan* and *Westbrook* both stressed that the failure to explain the function of mitigating circumstances was a serious shortcoming that rendered the instructions "hollow." 743 F.2d at 779; 704 F.2d at 1503. Likewise in this case, the court's charge left the jury without proper guidance in its sentencing deliberations, which amounted to a violation of the Eighth and Fourteenth Amendments. The district court properly granted habeas corpus relief on this ground.

## II. *Sandstrom* Claim

The petitioner also takes issue with the jury charge given at the liability stage of the trial regarding malice and intent.[5] He claims that it impermissibly shifted the burden of proof to him in contravention of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The familiar instructions used by the trial court in this case have been considered in previous cases of this court and violate the proscriptions of *Sandstrom* in a number of ways.

These instructions establish a mandatory presumption: they go beyond simply authorizing a jury to draw inferences and state that "the law presumes."[6] They ask the jury to presume criminal intent from the use of a deadly weapon, as in *Mason v. Balkcom*, 669 F.2d 222 (5th Cir. Unit B 1982), *cert. denied*, 460 U.S. 1016, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983), and to presume that an intentional killing is malicious unless evidence of justification or mitigation shows otherwise, as in *Lamb v. Jernigan*, 683 F.2d 1332, 1341 (11th Cir.1982), *cert. denied*, 460 U.S. 1024, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983). As in *Francis v. Franklin*, —— U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), the instruction states that the acts of a person of sound mind and discretion "are presumed" to be the product of the person's will. The jury was not told that they had a choice or that they *might* infer the conclusion. *Id.* at ——, 105 S.Ct. at 1971 (quoting *Sandstrom v. Montana*, 442 U.S. 510, 515, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39 (1979)).

■ While the instructions duly note that the defendant may rebut any presumptions against him, they do not describe how he could go about making such a rebuttal. There is no mention of the quantum of evidence necessary to rebut the presumption. Because of this omission, the jury could have concluded that Dix had to pro-

---

**5.** The trial court gave the following charge on the issues of malice and intent:

> The law presumes every intentional homicide to be malicious until the contrary appears from the circumstances of alleviation, justification, mitigation or excuse.... When and if a killing is proved to your satisfaction to be the intentional act of the defendant, himself, the presumption of innocence with which he enters upon the trial is removed from him. And, the burden is upon him to justify or mitigate the homicide, unless ... there be no evidence introduced [against him that shows] justification or mitigation....
>
> I charge you that the acts of a person of sound mind and discretion are presumed to be the product of a person's will. But, this presumption may be rebutted....

> If such person uses a weapon in a manner in which such weapon is ordinarily employed to produce death and thereby causes the death of a human being, the law presumes the intent to kill. However, this presumption may be rebutted.

The charge also contained some general curative instructions: "It is for you, the Jury, to say whether the evidence in this case ... sufficiently identif[ies] this defendant as the slayer beyond a reasonable doubt.... A person will not be presumed to act with criminal intention."

**6.** As the district court noted, these instructions contain little of the extensive permissive language present in *Corn v. Zant*, 708 F.2d 549 (11th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984).

duce more than "some" evidence to rebut the presumption.[7] *Davis v. Kemp*, 752 F.2d 1515 (11th Cir.1985) (en banc). As the Supreme Court recently held in *Francis v. Franklin*, —— U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), the statement that a presumption "may be rebutted," when combined with mandatory language such as "the law presumes," could indicate to a reasonable juror that the defendant bears an affirmative burden of persuasion once the State proves the underlying act giving rise to the presumption. This ambiguity, together with the other misleading aspects of the instruction, created a real risk that the jury would shift the burden of proof to the defendant. The instruction at Dix's trial violated constitutional standards even more clearly than the instructions in *Davis*.

Since the charge to the jury in this case violated the presumption of innocence, the conviction cannot stand unless the State can demonstrate that the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Brooks v. Kemp*, 762 F.2d 1383 (11th Cir.1985) (en banc). Harmless error can be shown in one of two ways: either the charge could relate to an element not at issue in the trial, or the evidence of guilt could be so overwhelming that the error could not contribute to the jury's decision to convict. *Drake v. Kemp*, No. 83–8047, 762 F.2d 1449 (11th Cir.1985) (en banc); *Davis v. Kemp, supra; Mason v. Balkcom, supra*. Both malice and intent were at issue in the trial because the defendant presented evidence to support an insanity defense. Insanity, of course, negates criminal intent and malice.

*McCleskey v. Kemp*, 753 F.2d 877, 901 (11th Cir.1985) (en banc), does not compel

another conclusion because in that case the defendant made absolutely no effort to deny that an intentional killing had taken place. His choice of defenses, coupled with overwhelming evidence that an intentional killing had taken place, led the court to conclude that the *Sandstrom* error was harmless. Similar reasoning led the court in *Davis v. Kemp*, to reach the same result. In each of those cases, the court stressed the distinction between non-participation defenses such as the ones presented there, and a *mens rea* defense such as the one presented by Dix. Unlike the petitioners in *Davis* and *McCleskey*, it cannot be said that Dix has taken malice or intent out of issue. The insanity defense placed criminal intent at issue here; indeed, it was the primary issue at trial.

Harmless error in this case could therefore only be based on overwhelming evidence. As for the strength of the evidence here, the district court based its finding of harmless error on an evaluation of all the evidence showing that Dix was the person who killed his wife. That evidence was indeed overwhelming. But that does not mean that the error must be found harmless, because the State presented much weaker evidence related specifically to the issues of intent and malice. The evidence specifically related to intent must be overwhelming before a *Sandstrom* error becomes harmless. *Brooks v. Kemp, supra* at 1390; *Davis v. Kemp, supra*, at 1521. If the overwhelming evidence relates only to the identity of the killer, the jury still has to consider intent as a separate element of the offense and could rely on the faulty presumption in reaching its verdict.

7. The intent charge clearly transgresses on this score. There is one possible way, however, to argue that the malice charge delineates the weight of the burden placed on the defendant. Because malice is presumed only if there is "no evidence" of justification or mitigation in the case presented against the defendant, the defendant might be able to rebut the presumption by presenting "some" evidence of justification or mitigation.

This maneuver does not save the malice charge because other portions of the malice charge contradict it, including the statement that the defendant must show justification or mitigation to the "satisfaction" of the jury. Despite the possible saving interpretation, the jury still could have misunderstood the malice charge as a whole.

The defendant and the state each produced expert witnesses to evaluate Dix's sanity. The experts made similar observations and diagnoses but reached differing conclusions regarding his criminal responsibility for the killing. Furthermore, the defendant introduced evidence of a history of possible mental illness and unstable (perhaps psychotic) behavior. The evidence establishing intent was far from overwhelming in this case, and weaker than the evidence of intent in *Brooks v. Francis, supra,* where a defendant's bare claim that a shooting was accidental undermined powerful evidence to the contrary. Since the evidence of sanity in this case was not overwhelming, the jury could have reached its verdict by relying on the illegal presumption. The *Sandstrom* error was not harmless.

The district court ruled correctly that the charge to the sentencing jury was not adequate but mistakenly found that any erroneous charge to the jury at the liability trial was harmless error. The judgment is AFFIRMED in part and REVERSED in part.