**Jose Martinez HIGH, Petitioner,**

v.

**Ralph KEMP, Warden, Georgia Diagnostic & Classification Center, Respondent.**

**Civ. A. No. CV185–041.**

United States District Court,
S.D. Georgia,
Augusta Division.

Nov. 19, 1985.

34A at A–37), which Dow quickly sent to Witco on October 30, 1980. (*Id.* at A–39a.)

Bradley S. Stetler, Office of Public Defender, Burlington, Vt., Michael C. Garrett, Augusta, Ga., for petitioner.

Mary Beth Westmoreland, Asst. Atty. Gen., Atlanta, Ga., for respondent.

## ORDER

BOWEN, District Judge.

The petitioner, Jose Martinez High, is under sentence of death and applies to this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

In its review of this case the Georgia Supreme Court noted that the facts were set out in the companion case of *Ruffin v. State*, 243 Ga. 95, 252 S.E.2d 472 (1979), *cert. denied* 444 U.S. 995, 100 S.Ct. 530, 62 L.Ed.2d 425 (1980). *High v. State*, 247 Ga. 289, 276 S.E.2d 5 (1981). The *Ruffin* court summarized the evidence as follows:

> In the late evening hours of July 26, 1976, Henry Lee Phillips was operating an Amoco service station off I–20 near Crawfordville, Georgia, with his eleven-year-old stepson, Bonnie Bulloch, helping him. A car pulled into the station with three occupants. [Judson Ruffin] and the two co-indictees, Nathan Brown and Jose High, were in the car. The car had been in the station a week or two earlier. The three men got out of the car and one pointed a pistol at Phillips. [Ruffin] had a sawed-off shotgun. Phillips was forced to leave the booth while [Ruffin] removed the money from the register and demanded any other money. When Phillips told him that there was no more money, [Ruffin] grabbed Bonnie Bulloch and told Phillips to get in the car trunk or Phillips and the boy would be killed. Phillips got in the trunk of the car and when he was released from the trunk found that they were in the woods. Phillips and his stepson were ordered to lie on the ground. Phillips then heard shots fired. When Phillips regained consciousness he discovered the Bulloch was dead.... Phillips had been shot in the temple and wrist. He managed to get to a nearby house and the sheriff was summoned.

*Ruffin v. State, supra* at 95, 252 S.E.2d at 474 (1979), *cert. denied*, 444 U.S. 995, 100 S.Ct. 530, 62 L.Ed.2d 425 (1980).

The Georgia Supreme Court noted the following additional evidence in the instant case:

> The evidence, if it is to be believed, shows that [High] and his two co-indictees planned the armed robbery on the night in question with the express purpose of eliminating any witnesses to the crime. They abducted an eleven-year-old child along with his stepfather at gunpoint. The victim was fifty-six inches tall and weighed seventy pounds. As they drove the victims to the execution site, the young boy rode inside the automobile with [High] while his stepfather was locked in the trunk. [High] in his statement said he thought the boy was too young, but he kept asking him as they rode, "Are you ready to die? Do you want to die? Well, you're going to die." He stated that the boy was begging for his life. Once the three robbers reached a rural area, the victims were removed from the car, marched around to the front of the automobile and forced to lie on their faces. They were then shot in the head in a cold-blooded execution fashion. The murder victim's stepfather, however, was not fatally injured.

*High v. State*, 247 Ga. at 296, 276 S.E.2d at 13.

Petitioner was convicted in the Superior Court of Taliaferro County, Georgia, on charges of murder, armed robbery, two counts of kidnapping with bodily injury, aggravated assault and the unlawful possession of a firearm during the commission of a crime. On December 1, 1978, petitioner initially was sentenced to death for murder, armed robbery and two counts of kidnapping with bodily injury. Petitioner also received a five-(5) year sentence for unlawful possession of a firearm and a ten-year sentence for aggravated assault. The Georgia Supreme Court affirmed the convictions for murder, armed robbery and

two counts of kidnapping with bodily injury. The court vacated the convictions for the unlawful possession of a firearm and aggravated assault, holding that these crimes merged into the crimes of armed robbery and kidnapping. *High v. State*, 247 Ga. at 294–95, 276 S.E.2d at 11–12. The court affirmed the death penalty for murder and one count of kidnapping with bodily injury but *sua sponte* vacated the death sentences for armed robbery and for the one count of kidnapping with bodily injury in which the victim did not die. *High v. State*, 247 Ga. at 297, 276 S.E.2d at 14. The Georgia Supreme Court denied a petition for rehearing on March 31, 1981. The United States Supreme Court denied petitioner a writ of certiorari. *High v. Georgia*, 455 U.S. 927, 102 S.Ct. 1290, 71 L.Ed.2d 470 (1982). A petition for rehearing was also denied. *High v. Georgia*, 455 U.S. 1038, 102 S.Ct. 1742, 72 L.Ed.2d 156 (1982).

Petitioner's state habeas corpus petition, filed in the Superior Court of Butts County, Georgia, was denied on June 25, 1982. On June 30, 1982, the Georgia Supreme Court granted petitioner's motion for a stay of execution and an application for certificate of probable cause to appeal. The court remanded the case to the superior court for further proceeding. After an evidentiary hearing on the issue of the ineffectiveness of counsel, the Superior Court of Butts County found that this and all other issues raised by petitioner were without merit and denied relief on September 10, 1982. The Georgia Supreme Court affirmed the dismissal of the habeas corpus petition. *High v. Zant*, 250 Ga. 693, 300 S.E.2d 654 (1983). Petitioner's motion for a rehearing was denied. Petitioner's subsequent petition for a writ of certiorari was denied by the United States Supreme Court on May 29, 1984. *High v. Georgia*, — U.S. —, 104 S.Ct. 2669, 81 L.Ed.2d 374 (1984).

The petitioner is before this Court to challenge the constitutionality both of his conviction and of the sentence imposed. The state does not contest the fact that the petitioner has exhausted all of his available state remedies. In paragraphs 12 through 89 of his petition, High generally enumerates the following reasons, not all of which were seriously urged, to support his challenge:

A. His counsel provided ineffective assistance during the sentencing phase of petitioner's trial. Paragraphs 13–15.

B. The death penalty oriented qualification of his jury. Paragraphs 16–20.

C. Certain jurors were prematurely excluded in violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Paragraphs 21–23.

D. The *voir dire* procedures denied petitioner his right to a fair trial. Paragraphs 24–27.

E. The Georgia statute which gives the state peremptory strikes is unconstitutional. Paragraphs 28–29.

F. Petitioner was denied state paid assistance of experts in the preparation of his case. Paragraphs 30–32.

G. The venue of petitioner's trial should have been changed due to pre-trial publicity. Paragraphs 33–36.

H. Petitioner was denied his right to a speedy trial. Paragraphs 37–40.

I. Petitioner's statements and certain physical evidence were obtained as the result of an arrest that violated the Fourth and Fourteenth Amendments. Paragraphs 41–45.

J. Petitioner was denied a fair trial. Paragraphs 46–47.

K. The failure to record bench conferences violated petitioner's constitutional rights. Paragraphs 48–49.

L. Petitioner was denied state paid assistance in pursuing habeas corpus relief. Paragraph 50.

M. The jury instructions on intent unconstitutionally shifted the burden of proof to the petitioner. Paragraphs 51–54.

N. The trial court gave other improper instructions during the guilt-innocence phase of the trial. Paragraph 55.

O. Improper prosecutorial argument during the guilt-innocence phase of the trial. Paragraphs 56–59.

P. Improper prosecutorial argument during the sentencing phase of the trial. Paragraphs 60–64.

Q. Sentence of death for this petitioner is cruel and unusual punishment. Paragraphs 65–67.

R. Georgia's "aggravating circumstances" statute was applied in an overly broad manner. Paragraphs 68–70.

S. The jury instructions on mitigating and aggravating circumstances were improper and inadequate. Paragraphs 71–73.

T. Multiple death counts were improperly submitted to the jury. Paragraphs 74–75.

U. Petitioner was improperly sentenced for crimes that merged. Paragraph 76.

V;W. Petitioner's sentence is arbitrary and discriminatory. Paragraphs 77–83.

X. The appellate review process violates petitioner's constitutional rights. Paragraphs 84–86.

Y. Petitioner improperly received the death sentence. Paragraph 87.

Z. The means of execution in Georgia is unconstitutional. Paragraphs 88–89.

### INEFFECTIVE ASSISTANCE OF COUNSEL

■ Petitioner alleges that his counsel, John H. Ruffin, Jr., did not render reasonably effective assistance during the sentencing phase of his trial in that Mr. Ruffin failed to:

1. investigate and call witnesses during the sentencing phase; and

2. present any evidence during the sentencing phase.

In considering an allegation of ineffective assistance of counsel, it should be noted that "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). In this two-part test, petitioner must first show that his counsel's "acts or omissions were outside the wide range of professionally competent assistance." *Id.* at ——, 104 S.Ct. at 2066. Petitioner must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at ——, 104 S.Ct. at 2068. That is, petitioner must show that the error had a prejudicial effect.

"Judicial scrutiny of counsel's performance must be highly deferential. ... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at ——, 104 S.Ct. at 2065.

The evidence presented in the state habeas proceedings was that Mr. Ruffin practiced law for over twenty years and that approximately twenty-five percent of his practice had been in the area of criminal law. Habeas Corpus Transcript at 12. *High v. Zant*, Civil Action No. 5585 (Sup.Ct. of Butts Co., Ga., Aug. 12, 1982). Mr. Ruffin further testified that he had represented at least a half dozen other defendants in capital cases and in at least two of those cases the death penalty was imposed. *Id.* at 13.

Regarding the failure to present mitigating evidence during the sentencing phase of the trial, Mr. Ruffin and two law students assisting him were unable to find witnesses to testify on High's behalf. *Id.* at 14. High's parents were also unable to suggest any witnesses. *Id.* at 16. As part of his trial strategy, Mr. Ruffin decided not to call High's parents as witnesses during the sentencing phase because "[t]hey were very broken up and distraught about this and I thought that the jury might get the impression that it was fiegned [sic] and

decided against calling either one of those." *Id.* at 18.

Petitioner High submitted a number of affidavits from people who stated they would have been willing to testify at trial during the sentencing phase. However, as the Superior Court of Butts County found and as Mr. Ruffin testified, it is not unusual for potential witnesses to come forward after trial with offers of help.[1] *Id.* at 17. *See also* Order Denying Habeas Corpus Petition at 6–7, (Sup.Ct. of Butts Co., Ga., Sept. 10, 1982). It should be noted that petitioner has had years to line up the witnesses. Mr. Ruffin had only a few hours.

As stated by the United States Supreme Court, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct." Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984) (emphasis added).

Mr. Ruffin and his assistants did investigate for potential evidence of mitigating circumstances. Mr. Ruffin considered the potential witnesses and made a conscious decision not to present any evidence to the jury during the sentencing phase. In deciding not to present potential evidence available to him at the time of the trial, Mr. Ruffin, an experienced trial lawyer, acted professionally and reasonably. In fact, Mr. Ruffin's performance was more than adequate.[2] As correctly stated by the Georgia Supreme Court:

In viewing the contention of ineffectiveness of counsel, we cannot consider potential mitigation evidence *in vacuo,* any more than the trial jury might blot out what they have seen and heard for several days in the guilt phase, once they turn to consider sentence. Here, the jury learned of the execution-style killing of an eleven-year-old child, whose only offense against High was that he was present when High and his companions robbed a service station, thereby committing the crime of becoming an involuntary witness. Here, the jury was exposed to the tragic death of a little boy, shot through the head after High had continued to ask and assure him " 'Are you ready to die? Do you want to die? Well, you're going to die.' " *High v. State,* [247 Ga. 289, 296, 276 S.E.2d 5, 13, (1981) ]. Here, the jury learned of a small child removed from a car, marched around the front of an automobile and forced to lie upon his face, as three murderers snuffed out his life. Here, the jury heard of High bragging that "he wanted to be the most famous black ringleader in the world."

Up against that, High's counsel is charged with derogation of duty in failing to call someone who would mount the stand to say that Jose was a normal teenager, or that he never talked to a school psychologist.

In the face of the monstrosity of what High did to eleven-year-old Bonnie Bulloch, we can easily understand the decision of an *experienced* defense lawyer who sees, with us, the hazard of deigning to present such transparencies.

*High v. Zant,* 250 Ga. 693, 695, 300 S.E.2d 654, 657–58 (1983) (emphasis in original).

Considering all the circumstances, High was furnished effective assistance of counsel and petitioner's contention is without merit.

## JURY INSTRUCTIONS ON INTENT

■ Petitioner High urges that the jury instructions during the guilt-innocence phase of the trial improperly shifted the

---

**1.** Mr. Ruffin testified, regarding the two affidavits that he had reviewed, "I don't think it would have made any difference for the reason that that trial and the courtroom had an air of tension about it that I have never witnessed before and never since." State habeas corpus transcript at 19.

**2.** Petitioner does not challenge his counsel's effectiveness prior to the sentencing phase. This is for good reason since Mr. Ruffin twice successfully challenged the composition of the grand juries which indicted High.

burden of proof in violation of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The relevant instructions are as follows:

A *crime* is a violation of a statute of this State in which there shall be a union of joint operation of act and intention. I charge you that the acts of a person of sound mind and discretion are presumed to be the product of a person's will, but the presumption may be rebutted. I charge you that a person of sound mind and discretion is presumed to intend the natural and probable consequences of his act, but the presumption may be rebutted. I charge you that a person will not be presumed to act with criminal intention, but the trior (sic) of the facts may find such intention upon consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted.

Trial Transcript at 882.

I charge you, ladies and gentlemen of the jury, that the law presumes that a person intends to accomplish the natural and probable consequences of his act or acts if that person uses a deadly weapon or instrumentality in the manner in which such weapon or instrumentality is ordinarily employed to produce death and thereby causes the death of a human being. The law presumes the intent to kill. This presumption may be rebutted. I further charge you that a person shall not be presumed to act with criminal intention but the triors (sic) of the facts may find such intention upon consideration of the words, conduct, demeanor, and all other circumstances connected with the act for which the accused has been prosecuted. The burden is upon the State to prove the act alleged to be criminal is, in fact, a criminal act beyond a reasonable doubt.

*Id.* at 894–95.

The instruction that "[A] person of sound mind and discretion is presumed to intend the natural and probable consequences of his act, but the presumption may be rebut-

ted" is nearly identical to the ones found impermissible in the recent Supreme Court case of *Francis v. Franklin*, —— U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) and by the Eleventh Circuit Court of Appeals in *Davis v. Kemp*, 752 F.2d 1515 (11th Cir. 1985) (*en banc*). The Eleventh Circuit, however, has said that a *Sandstrom* error can be held harmless beyond a reasonable doubt. *Davis v. Kemp*, 752 F.2d at 1520–21. There are two situations in which a *Sandstrom* violation can be harmless error: (1) where the evidence of the defendant's guilt is overwhelming; and (2) where the element of intent is not in issue at trial. *Davis*, 752 F.2d at 1521. Footnote 10 of the *Davis* opinion makes it clear that the analysis should focus on whether the evidence of *intent*, rather than *guilt*, is overwhelming. *Davis*, 752 F.2d at 1521, n. 10; *see also Brooks v. Kemp*, 762 F.2d 1383, 1390 (11th Cir.1985) (rehearing *en banc*); *Drake v. Kemp*, 762 F.2d 1449, 1453 (11th Cir.1985) (rehearing *en banc*); and *Tucker v. Kemp*, 762 F.2d 1496, 1502 (11th Cir. 1985) (rehearing *en banc*).

In discussing the first type of situation in which a *Sandstrom* error may be harmless, the Court in *Tucker v. Kemp* stated: "The reason for this focus [on whether there is overwhelming evidence of intent, instead of guilt] is apparent. In the usual case, as in *Davis* and the instant case, the erroneous intent instruction could not possibly affect the jury's determination of who the killer was. Rather, the intent instruction could have tainted only the finding of intent." *Tucker*, 762 F.2d at 1502. The evidence in High's case is overwhelming that whoever killed the victim did so with intent and malice. The youthful victim was abducted during an armed robbery; driven to a remote area; unmercifully taunted and threatened; and taken out of the car and shot. There is no evidence that the shooting was accidental. The *Sandstrom* error is harmless beyond a reasonable doubt because of the overwhelming evidence of the intent of the killer.

Additionally, the *Sandstrom* error is harmless beyond a reasonable doubt under

the second situation identified in *Davis:* intent was not in issue. Jose High's defenses had been that he was not present, or in the alternative, that he was not the person firing the shots. That is, High did not contend that he lacked the required intent; he contended that he did not kill. It, therefore, is "beyond a reasonable doubt that the [Sandstrom] error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) (standard for harmless error of constitutional issues).

## PROSECUTORIAL ARGUMENT DURING THE GUILT–INNOCENCE PHASE

■ An allegation remaining for consideration is that the prosecutor made improper comments and arguments to the jury during the guilt-innocence phase of the trial. The Supreme Court in *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868 (1974), set forth the standard for reviewing habeas corpus petitions alleging that a state prosecutor's argument was improper. The allegedly improper remarks must be examined in light of any curative instructions given by the trial court, and it must be determined whether the argument, taken as a whole, rendered the determination of petitioner's guilt fundamentally unfair. As recently stated by the Eleventh Circuit Court of Appeals, "[t]he *Donnelly*

> decision provides important guidelines for reviewing allegedly improper prosecutorial argument. Of primary importance is the need to examine the entire context of the judicial proceeding. Thus, it is not our duty to ask whether a particular remark was unfair; we are concerned with whether it rendered the entire trial unfair. In this regard, isolated or ambiguous or unintentional remarks must be viewed with lenity. Finally, the giving of a curative instruction by the trial court may remedy effects of improper comments."

*Brooks v. Kemp*, 762 F.2d 1383, 1400 (11th Cir.1985) (*en banc*). Ultimately, it is the question of "fairness" that the Court must address in determining whether a prosecutor's comments and arguments violated petitioner's right to due process. In *Brooks*, the Eleventh Circuit adopted the "reasonable probability" test for "the fundamental fairness inquiry to be undertaken in cases where improper prosecutorial argument is at issue." *Id.*, 762 F.2d at 1401. The "reasonable probability" test articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), dealt with a specific sixth amendment violation. However, the Eleventh Circuit adopted the *Strickland* test because it presented a useful standard for determining the fundamental fairness of a trial or proceeding. *Brooks*, 762 F.2d at 1401. As applied to this case, the *Strickland* test requires "an assessment of errors to determine whether there is a reasonable probability that [improper comments and arguments] changed the outcome of a case" thereby rendering the trial fundamentally unfair. *Id.*, 762 F.2d at 1402. Petitioner has a heavy burden in satisfying the "reasonable probability" test. However,

> asking whether the absence of improper argument would have, in reasonable probability, changed the result is consistent with the standards discussed in *Donnelly* and with subsequent cases applying the fundamental fairness standard. The several factors which those cases have found relevant operate in the same fashion under the "reasonable probability" test. For example, the willingness to tolerate an isolated or ambiguous argument stems from a recognition of its minimal effect upon the jury. Another factor—the degree to which the challenged remarks have a tendency to mislead the jury and prejudice the accused, *Hance v. Zant*, 696 F.2d [940] at 950 n. 7 [ (11th Cir.1983) ]—is necessarily included within the reasonable probability test. Even argument greatly exceeding the bounds of propriety will not be fundamentally unfair in the guilt phase of a case with overwhelming evidence because of the low probability of the argu-

ment's impact. *See, e.g., Cobb v. Wainwright*, 609 F.2d 754 (5th Cir.) (given the strength of evidence against the defendant, the prosecutor's inflammatory argument did not render trial fundamentally unfair), *cert denied*, 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 857 (1980); *Cronnon v. Alabama*, 587 F.2d 246 (5th Cir.) (improper argument not unconstitutional due to overwhelming evidence of guilt), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1979). On the other hand, arguments serious enough to satisfy the "reasonable probability" test have been found "fundamentally unfair" under the *Donnelly* standard. *See e.g., Houston v. Estelle*, 569 F.2d 372 (5th Cir.1978) (repeated unsupported and inflammatory references to defendant as liar and dealer of drugs, and argument that defense counsel's objections and motions for mistrial evidenced desire to take case away from the jury, all over objection by defense counsel, so pervaded the trial as to be unconstitutional—even a

curative instruction did not mitigate actual prejudice to defendant).

*Id.,* 762 F.2d at 1401–02 (footnotes omitted). In the present case, High lists numerous remarks made by the prosecutor that *may* be said to be improper.[3] However, by putting these remarks in context and looking at the arguments as a whole, the Court concludes that there is *not* a reasonable probability that the statements rendered the determination of petitioner's guilt fundamentally unfair. That is, the prosecutor's comments did not change the outcome. In my opinion the prosecutor merely argued the logical and reasonable inferences from the facts in evidence. The petitioner supplied the evidence. One who engages in an atrocity of these dimensions might well expect an elected prosecutor to speak ill of such wickedness.

## PROSECUTORIAL ARGUMENT DURING THE SENTENCING PHASE

■ Petitioner High also alleges that the prosecutor made constitutionally improper

---

**3.** That's the kind of creature we're working with ... [Y]ou're not dealing with a human being—Don't you know you're not dealing with a human being that's normal and natural as you and I are?
Tr. 835.

I'm not going to tell you what verdict to render. You know what you can do—what you want to do. But we're not dealing with a human here. When you write your verdict, remember you're not dealing with a human being. You know the Good Lord looks down with a lot of disfavor on this kind of activity. There must be a lot of uncomfortable people around here.

I say again as I started off, before you write a verdict ask yourself this other question: If my child had been out there or my grandchild or my brother or my sister—what would have happened? At the hands of this man who is inhuman—by his own accounts he's inhuman. By his own actions he's inhuman. By his own declarations he's inhuman.
Tr. 845.

... I thank the Good Lord that he didn't let me pattern my life to people like that.
Tr. 831.

I've been in the homes of some of you and you know that I'm not [the] kind of person [to bad-mouth anybody]. And I'm not asking you to do anything wrong. I wouldn't do that. I never have and I don't intend to start now. I've been here nineteen years and I haven't done it yet.
Tr. 844

You know the only reason your child wasn't killed out there at that filling station? Those of you who have children—and I don't know all of you—some I do—Do you know the reason your children weren't killed out there—or your child wasn't kidnapped? Do you know the reason your child wasn't said to and asked, Are you ready to die? Do you know the reason your child didn't have to beg for his life? Do you know that? Do I have to tell you that? If there's any doubt in your mind that that little loved one that you've held in your arms—that one that you've nurtured and gave birth to—the women—and fathered by the men—and grandchildren by others—The only reason your child wasn't kidnapped—the only reason he wasn't taken at gunpoint—the only reason he didn't have to beg for his life was because he wasn't there.
Tr. 842, 843.

[T]hey made a circle of our little area here and went back down to Augusta where they could do what? Get ready to plan some more robberies—according to the testimony in the case—more murders.
Tr. 824.

[H]e'd killed four and a half, and the 'half' was one that was shot that didn't die. That's in evidence. Killed four and a half people.
Tr. 836.

statements during his argument to the jury during the sentencing phase of the trial.[4] These comments must be viewed using the standard discussed previously in examining comments made during the guilt-innocence phase. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Brooks v. Kemp,* 762 F.2d 1383, 1400 n. 25 (1985). Again, by putting these comments in context and looking at the argument as a whole, the Court concludes that there is *not* a reasonable probability that the statements rendered the sentencing phase of petitioner's trial fundamentally unfair. That is, the prosecutor's comments did not change the outcome. My opinion of the prosecutor's comments at this phase are the same as I stated for the guilt-innocence phase.

## JURY INSTRUCTIONS ON MITIGATING AND AGGRAVATING CIRCUMSTANCES

■ In his petition at paragraphs 71–73, High challenges the constitutional adequacy of the court's instructions to the jury during the sentencing phase of his trial alleging that the trial court inadequately instructed the jury as to mitigating circumstances and that the trial court improperly instructed the jury as to Georgia's seventh statutory aggravating circumstance.[5]

This Court recognizes its duty to construe jury instructions as a whole in determining their constitutional adequacy:

> [It is a] well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.... While this does not mean

that an instruction by itself may never rise to the level of constitutional error, ... it does recognize that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction.

*Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973) (citations omitted). Even though the *Naughten* decision considered jury instructions at the conviction phase of an armed robbery trial, the same judicial policy should equally apply to instructions given at the sentencing phase of a murder trial.

In regard to High's contention that the jury was inadequately instructed as to mitigating circumstances, the Eleventh Circuit has stated:

> In light of *Lockett, Gregg* and *Chenault* [*v. Stynchcombe,* 581 F.2d 444 (5th Cir.1978)], we hold that the eighth and fourteenth amendments require that when a jury is charged with the decision whether to impose the death penalty, the jury must receive clear instructions which not only do not preclude consideration of mitigating factors, *Lockett,* but which also "guid[e] and focu[s] the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender...."
> *Jurek v. Texas,* 428 U.S. [262] at 274, 96

---

**4.** "I think of Hitler's Germany when I think of mass murder as atrocities." Tr. 910.

"Another reason why I think you're authorized to impose the death penalty—I think that we should send out a notice to society, from our society, to people like Jose High." Tr. 914.

"I knew the circumstances of the case—I knew it was going to be a mean, horrible thing—and you now know it was." Tr. 915.

**5.** High also claims, in paragraphs 68–70 of his petition, that the seventh statutory aggravating circumstance has been applied in an unconstitutionally vague and overbroad manner. High

cites *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) in support of his claim regarding Ga.Code Ann. § 27–2534.1(b)(7) (Harrison) (currently codified as Ga.Code Ann. § 17–10–30(b)(7) ).

The Georgia Supreme Court has already upheld High's death sentence pursuant to this seventh statutory aggravating circumstance, specifically stating that it was reviewing the jury's finding of that aggravating circumstance in light of *Godfrey v. Georgia.* This Court will not second-guess a state court's interpretation of its aggravating circumstances statute.

S.Ct. [2950] at 2957 [49 L.Ed.2d 929 (1976)]. In most cases, this will mean that the judge must clearly and explicitly instruct the jury about mitigating circumstances and the option to recommend against death; in order to do so, the judge will normally tell the jury what a mitigating circumstance is and what its function is in the jury's sentencing deliberations.

*Spivey v. Zant,* 661 F.2d 464, 471 (5th Cir. Unit B 1981) (footnote omitted), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982).

At the sentencing phase of High's trial, the Court instructed the jury:

Mr. Foreman and members of the jury, this, as I have heretofore indicated or stated to you, is the sentencing phase of this trial. It's very highly necessary that you listen to every word that the Court is now about to speak or to charge you at this time, and even so, Mr. Foreman, it may be well that you, if you are so prepared, to possibly take note if you desire, of some of the things the Court may tell you.

You will not be concerned in anywise in assessing or fixing a penalty as to Counts nos. 2 and 6—you will not fix any penalty whatever as to Count No. 2 which charges possession of firearm during commission of or attempt to commit the crime of armed robbery, nor to Count No. 6 which charges aggravated assault. You will not fix any penalty whatever as to those two counts.

Now, you have found the defendant guilty of the offenses of kidnapping as contained in Counts Nos. 3 and 4 of the bill of indictment and of the offense of murder as contained in Count No. 5 of the bill of indictment. It is now your duty to determine within the limits prescribed by law, the penalty that shall be imposed as punishment for those offenses. In reaching this determination, you are authorized to consider all of the evidence received by you in open court in the first phase of the trial, including all mitigating facts and circumstances, if any, on behalf of the defendant. You are authorized to consider all of the facts and circumstances in the case. Under the law of this State, every person guilty of the offense of murder and/or kidnapping, when the victim is injured, shall be punished by life in the penitentiary or death by electrocution. The law provides, Mr. Foreman and ladies and gentlemen of the jury, for punishment either by death, life imprisonment, or imprisonment for a period of years, insofar as the charge of armed robbery is concerned as is contained in Count No. 1 of the bill of indictment. As to that charge and count, you would fix a sentence only if you find that the defendant should be punished by death or life imprisonment. If you do not find that the defendant should be punished by death or life imprisonment, you should show this by your verdict and the sentence would be then fixed by the Judge. In that case, the form of your verdict would be as to Count No. 1, "We, the jury, find that the defendant should receive less than a life sentence." In that case, your duty would be ended as to Count No. 1. If this is not your finding as to Count 1, you would apply the remaining instructions, which would be given to you, and determine whether the defendant should be punished by death or life imprisonment. In reaching this determination, you are authorized to consider all of the evidence received by you in open court in the trial of the case. You are authorized to consider all of the facts and circumstances of the case including mitigating facts and circumstances, if any, on behalf of the defendant.

In the event that your verdict is life imprisonment, that is, as it applies to Counts Nos. 3 and 4 relating to kidnapping, the punishment the defendant would receive would be imprisonment in the penitentiary for and during the remainder of his natural life. If that be your verdict, you would add to the verdict already found by you an additional verdict as follows: "And we fix his punishment as life imprisonment."

As it applies to kidnapping when the victim is injured, you may, however, if you see fit and if that be your verdict, fix his punishment as death, which would require

**326**

a sentence by the Court of death by electrocution. If that be your verdict, you would add to the verdict already found by you an additional verdict as follows: "And we fix his punishment as death."

I charge you that before you will be authorized to find a verdict fixing a sentence of death by electrocution, you must find evidence of statutory aggravating circumstances, as I will define to you later in the charge, sufficient to authorize the supreme penalty of the law. I charge you that a finding of statutory aggravating circumstance or circumstances shall only be based upon evidence convincing your minds beyond a reasonable doubt as to the existence of one or more of the following factual conditions in connection with the defendant's perpetration of the act or acts for which you have found him guilty. They are (1) the offense of murder and/or armed robbery and/or kidnapping was committed while the offender was engaged in the commission of another capital felony or aggravated battery; (2) the offense of murder and/or armed robbery and/or kidnapping was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim.

Now, the statutory instructions that you are authorized to consider will be submitted in writing to you for your deliberation. If you fix his punishment as death, you must also designate in writing the aggravating circumstances or circumstance which you found beyond a reasonable doubt. Your verdict should be agreed to by all twelve of your members. It must be in writing, entered under the instructions of the Court, dated and signed by your Foreman, and returned into Court for publication.

Now, the Court has prepared the necessary charge which it has referred to, in writing, and in addition to that fact the Court has caused to be placed thereon a verdict of the jury, and you may use this form itself or as your guide. It must be clear, concise, and specific. That is, the verdict—your findings and your recommendations as to these sentences in these cases. It is provided on the form that is prepared by the Court that you specify life imprisonment or specify the death penalty. I would charge you insofar as that is concerned that you specify the counts—whatever counts you may determine that he—If you find that the life sentences should be imposed upon him, you must specify the counts as they are contained in the bill of indictment that he shall be sentenced for life upon. And if you find that he shall be sentenced to death, you must specify that the counts under which you sentence him to death, you would do it in the place provided here for that purpose.

Also, I charge you that if you recommend the death penalty as stated, you must recommend the counts under which you find and recommend the death penalty. You must state and set forth the aggravating circumstances which caused you or compelled you to inflict the death penalty as to whatever count or counts you might see fit to inflict such penalty.

Ample space is left in this form for you to write out and you must detail, if such be your findings, the aggravating circumstances which cause or compel you to affix the death penalty for that count or those counts which you think and determine he is entitled to receive.

After you shall have arrived at your verdict, Mr. Foreman, you would enter the verdict upon this form supplied to you by the Court, together with this charge; you would conform that verdict to the form which has been prepared; you would date it and sign it and you would then return it into Court.

You might now retire and commence your deliberations after you shall have received the indictment, the evidence adduced during the course of the trial—and I assume that it is still in the juryroom—and then determine the penalty or punishment that shall be imposed in this case.
Trial Transcript at 925–30.

The court conferred with counsel, and after bringing the jury back into the courtroom, further charged as follows:

During the course of the charge, the Court overlooked one thing that it should have charged you, and I would now give it to you in charge and add it to what I have heretofore stated during the phase of this charge.

I charge you, members of the jury, that if you find that the State has proved one or more statutory aggravating circumstances beyond a reasonable doubt that you may recommend that the defendant receive a life sentence.

I neglected to tell you that and now I have charged it and now you may return to the juryroom and commence those deliberations.

Trial Transcript at 931. The entire text of the trial court's jury instructions during the sentencing phase has been set out because these instructions are very similar in critical language to the jury charge found unconstitutional by the court in the case of *Ruffin v. Zant*, 591 F.Supp. 1136 (S.D.Ga. 1984) *rev'd on other grounds* 767 F.2d 748 (11th Cir. 1985). *See also, Spivey v. Zant*, 661 F.2d 464 (5th Cir.1981) (Unit B), *cert. denied*, 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982).

While the jury in the present case was instructed that a life sentence may be recommended even if the jury found the existence of one or more aggravating circumstances, the jury was not clearly instructed about the nature and function of mitigating circumstances. *Spivey* and "[l]ater cases have noted that a trial court does not fulfill its responsibility simply by informing a jury that it may consider mitigating circumstances." *Dix v. Kemp*, 763 F.2d 1207, 1209 (11th Cir.1985). (*citing Morgan v. Zant*, 743 F.2d 775 (11th Cir.1984); *Finney v. Zant*, 709 F.2d 643 (11th Cir.1983); *Westbrook v. Zant*, 704 F.2d 1487 (11th Cir. 1983)). As also noted by *Dix*,

> most importantly, the instruction did not explain the function of a mitigating circumstance. The charge never set forth the reasons that a mitigating circumstance might be significant and never explained that mitigating circumstances could lead a jury to recommend mercy.

The courts in *Morgan* and *Westbrook* both stressed that the failure to explain the function of mitigating circumstances was a serious shortcoming that rendered the instructions "hollow." 743 F.2d at 779; 704 F.2d at 1503. Likewise in this case, the court's charge left the jury without proper guidance in its sentencing deliberations, which amounted to a violation of the Eighth and Fourteenth Amendments.

*Dix*, 763 F.2d at 1210. Therefore, the trial court's instructions given during the sentencing phase of High's trial are unconstitutional under the precedents established by the Eleventh Circuit. Consequently, High's death sentence for the murder and kidnapping of Bonnie Bulloch must be set aside.

I am constrained to comment that I strongly and thoroughly disagree with the application of the *Spivey* holding to this case. Here, there was no evidence whatsoever of mitigating circumstances. A rule that a judge must say some "magic words" in a jury charge is one grounded neither in reasonable statutory interpretation, common sense, nor precedent. Even the *Spivey* court observed that the trial judge "will normally" tell the jury about mitigating circumstances, thus indicating the existence of exceptions to the rule. A jury charge should always be viewed in its entirety and must be adjusted to the evidence. In this case the judge mentioned matters in mitigation and later told the jury they could recommend mercy in any event. The jury chose not to do so. The charge did not stress or explain matters in mitigation. Indeed, if it had, the effect would have been to draw greater attention to the *absence* of mitigation evidence in this case and thereby create a much sounder ground for reversal of the trial court. The application of the *Spivey* rule in this case defies tradition and says that a jury charge must be adjusted to non-existent evidence, that it must contain a shibboleth; if not, it is infected with error. However, the cases which follow *Spivey* require the blind application of its rule in every case. While I disagree with any concept which

calls for certain "mumbo jumbo" in every jury charge, it is nevertheless the law of this circuit.

My individual judicial opinion cannot control this case. I took an oath to apply the law, and intellectual honesty demands that the sentence be set aside—nine years after the murder. This is an abuse of the noble writ of habeas corpus. It is an unconscionable insult to the memory of Bonnie Bulloch and to everyone who has loved an eleven-year old. This order, reluctantly entered, is an effrontery to every tax-paying, law-abiding citizen in the land. The legislature of the State of Georgia, the trial judge, the Supreme Court of Georgia and a jury have willed death to the cold-blooded, craven killers of Bonnie Bulloch. The courts have fashioned a triumph of form over function. Guilt is irrelevant and word games assume constitutional proportions. Ignoring the prodding for needed reform by Senator Nunn and a few of his colleagues, the Congress sits idly by and lets it all go on and on.

### REMAINING ALLEGATIONS OF ERROR

This Court has thoroughly reviewed petitioner's remaining claims. All have been carefully considered, and each one is found to be without merit.[6]

### CONCLUSION AND ORDER

The petitioner's death sentence must be set aside due to the instructions given to the jury during the sentencing phase. Within 180 days from the date this decision becomes final because of expiration of time to appeal or the issuance of a mandate affirming this order, whichever is later, the state shall cause petitioner to be retried on the question of what sentence should be imposed for the crime of murder for which the petitioner's guilt has already been constitutionally established. If the state fails

to comply, the petitioner may make a written motion for such relief as may be appropriate. To such extent only the petition for writ of habeas corpus is GRANTED. Otherwise, it is DENIED.

---

**6.** Each of these claims has been examined on its merits and none are found to warrant the relief sought. Petitioner neither presented evidence nor addressed these claims when given the opportunity to do so at the hearing before this Court. Even though not seriously urged, and effectively abandoned, the interests of justice are best served by a resolution of the claims on their merits.